# CHARLESTOWN.

### STATE OF WEST VIRGINIA *v.* SUTFIN.

Submitted September 19, 1883—Decided September 29, 1883.

1. It is not necessary, that the form of the oath administered to a jury in a felony case should be entered on the record; it is sufficient, if the record shows that the jury were duly sworn. (p. 773.)

2. In a prosecution for felony the record must show, that the prisoner was present, when the plea was entered, and pleaded in person. (p. 773.)

3. Where a prisoner was on trial for felony, and the court discharged the jury, on the ground that they were unable to agree, and the prisoner was afterwards tried and convicted, and the record fails to show, that he objected to the discharge of the jury, or made any motion in the court below for his discharge, in the Appellate Court he will be deemed to have waived all objection to the discharge of the jury. (p. 776.)

4. It is error to give an instruction, which is confused in its language and calculated to mislead the jury. (p. 777.)

5. It is error to instruct the jury as to the weight or credibility of the evidence. (p. 777.)

| | |
|---|---|
| 22 | 771 |
| 39 | 466 |
| 22 | 771 |
| 40 | 721 |
| 22 | 771 |
| 45 | 69 |
| 22 | 771 |
| 47 | 269 |
| 22 | 771 |
| 49 | 613 |
| 22 | 771 |
| 56 | 693 |
| e56 | 694 |
| 57 | 72 |
| 57 | 148 |
| 22 | 771 |
| 58 | 97 |
| 22 | 771 |
| 61 | 701 |
| 22 | 771 |
| 64 | 399 |
| 22 | 771 |
| 66 | 515 |

6. It is not error for the court, after correctly instructing a jury as to
how witnesses may be impeached, to say to the jury, that "it is
neglect of a juror's duty to arbitrarily disregard the evidence
of a witness." (p. 778.)

The facts of the case are sufficiently stated in the opinion
of the Court.

*J. W. C. Armstrong* for plaintiff in error.

*Attorney-General Watts* for the State.

JOHNSON, PRESIDENT:

Millard Sutfin in March, 1883, was indicted in the circuit
court of Roane county for burglary. On the 6th day of
April his trial commenced, and on the 7th day of April, 1883,
the order of the court shows, that the jury not being able to
agree was discharged. " At a circuit court in and for the
said county of Roane, continued and held at the court-house
thereof on the 7th day of May, 1883, pursuant to its adjourn-
ment on the 7th day of April, 1883," the second trial of the
prisoner was commenced before a jury; and on the 9th day
of May, 1883, the jury rendered a verdict of guilty, and on
the 19th day of the same month judgment was rendered fix-
ing his term of imprisonment in the penitentiary at three
years. The prisoner saved two bills of exceptions to the
rulings of the court, both to instructions given to the jury,
and also saved on the record, which shows the affidavits of
prisoner and counter-affidavits of the State, an alleged error
in overruling a motion for a new trial on the ground of mis-
conduct of the officers in charge of the jury, and the separa-
tion of the jury.

To the judgment the defendant obtained a writ of error.

The first error assigned is, that the jury was not properly
sworn. The record states, that S. B. Beckner and eleven
others, naming them, "twelve good and lawful men selected
by lot, sworn and tried according to law to well and truly try
and true deliverance make between the State of West Vir-
ginia and the said prisoner, Millard Sutfin, according to the
law and evidence," &c. It will be observed, that this is a
mere recitation of what was done and no pretence is made of

setting out the whole form of the oath taken by the jurors. It is objected, the words *so help you God* do not appear in the oath. We will presume that the jury were properly sworn in the absence of anything to the contrary appearing on the record. In *Lawrence's Case*, 30 Gratt. 849, Moncure, President, says: "It is stated in the record after setting out the facts in regard to the arraignment and plea of the accused and the constitution and names of the jury summoned and empaneled for his trial, that they 'were sworn the truth of and upon the premises to speak.' Now this was obviously not the form of the oath administered to the jury, but was merely intended to be a statement of the fact, that the jury was duly sworn. In saying that they 'were sworn the truth of and upon the premises to speak' reference was made by the word 'premises' to the proceedings immediately set forth, to-wit: the indictment, the arraignment, the plea and the constitution of the jury. And the effect is the same, as if it had been said, that the jury were sworn 'well and truly to try and true deliverance make between the commonwealth and the prisoner at the bar and a true verdict render according to the evidence.' The prisoner and his counsel were in court, when the jury were sworn, and might and no doubt would have objected, if the jury were not properly sworn. The fact, that no objection was made, shows that they were properly sworn. It is not necessary, that the form of the oath administered to jurors on the trial of a felony case should be copied into the record; it is sufficient, that the record shows they were duly sworn."

It is also assigned as error, that this record does not show, that the prisoner was present in court, when the pleadings were made up. The record must show, that the prisoner was present in court and pleaded in person. This is indispensable. (*Sperry's Case*, 9 Leigh 623, *Hooker's Case*, 13 Gratt. 763, *Conkle's Case*, 16 W. Va. 736.) By an order entered in the case on the 6th day of April, 1883, it appears as follows: "This day came the State by her prosecuting attorney as well as the defendant by counsel; thereupon the defendant for plea says he is not guilty in manner and form as is alleged in said indictment, and of this he puts himself upon the country, and the State doth the like, and issue is thereon

joined." The same order shows, that the jury came and having heard the evidence and part of the argument of counsel, and not having time to complete the trial were adjourned until eight o'clock the next morning. The order shows further, that the officers were sworn to take charge of the jury, and prisoner : "Then came Millard Sutfin with his security and entered into a recognizance for his appearance on the next morning." There is certainly nothing in this order to show that the prisoner was present when the pleading was made up; and nothing appears, from which his presence could legitimately be inferred. True the record says: "The defendant for plea says," &c., but just before it is said, that he came by counsel. So far as the record shows, he was not present, when the plea was entered. This is an error, for which the judgment must be reversed.

It is insisted for the first time here, that the prisoner is entitled to his discharge, because the record shows, that he was before tried on the same indictment, and the jury failing to agree were discharged without his consent. It appears by the record, that on the 6th day of April his trial was commenced before a jury, and on the 7th day of April, 1883, "the jury having fully heard the argument of counsel retired to their chamber to consider of their verdict, and after some time returned into court, and not being able to agree the said jury were discharged and from rendering a verdict are excused and dismissed." The record shows the court was adjourned, on that day to the 7th day of May, 1883; on which day his second trial commenced. No reason is shown on the record for the discharge of the jury, except the court says they "were unable to agree." They had only been out one day at most. It is certainly a very bad practice to so promptly discharge a jury on the sole ground that they are unable to agree; and if the prisoner *had objected* to their discharge, it would raise here a very serious question. But it does not appear, that the prisoner objected to the discharge of the jury, or that he made thereafter any motion for his own discharge, because the jury was dicharged without his consent. His motion for a discharge on that ground appears for the first time here in argument of counsel.

In *Williams's Case*, 2 Gratt. 568, was an application for a

writ of *habeas corpus*; the petition showed, that prisoner had been indicted for larceny; that on the 28th of October he was put upon his trial, the case was given to the jury on the same day, the jury considered the case until the 30th, on which day the court against the objection of the prisoner discharged the jury, on the sole ground that in his opinion the jury was unable to agree. The court in its opinion says: "It appears from the return and the record of the said case, which is made a part of the return, that the facts set forth in the petition are true, and that the petitioner was detained in custody for no other cause." The court held, citing a number of authorities, that the court in a felony case cannot properly discharge the jury sworn to try the case without the consent of the accused, merely because the jury cannot agree.

In the case of *Crookham* v. *The State*, 5 W. Va. 510, the error was assigned, that the jury was discharged without the consent of the prisoner. It does not appear from the report of the case, either in the statement or in the opinion of Maxwell, J., who spoke for the whole court, whether or not the prisoner made any objection to the discharge of the jury. All that is said upon the subject is in the opinion and is as follows: "The third and fourth causes of error assigned are that a former jury had been empanelled to try the accused, which jury was discharged without his consent, and that he could not be tried again on the same indictment. The counsel for the accused to maintain this assignment of error cites the case of *Williams* v. *The Commonwealth*, 2 Gratt. 567, in which case it was decided by the general court, that on a trial for a felony the court had no authority to discharge the jury without the consent of the prisoner, merely because the court was of opinion the jury could not agree. This case was decided at the December term, 1845, of the court, and it cannot be doubted was decided correctly, as the law then was. But the General Assembly of Virginia very soon thereafter passed an act, to the effect that in any criminal case the court might discharge the jury, when it appeared, that they could not agree on a verdict. The provision is found in our Code page 718 section 7 in these words: 'In any criminal case the court may discharge the jury, when it appears, that they cannot agree on a verdict.' The order of the court states,

that the jury being unable to agree upon a verdict were discharged. Unless the provision of the Code just quoted is to be disregarded, the court committed no error in discharging the jury without the consent of the prisoner."

The court did not dispose of the real question in the case, if the jury was discharged against the objection of the prisoner, and that was: Had the Legislature the constitutional power to confer upon the court the right to discharge a jury in a felony case without the prisoner's consent? The authorities, which hold that the court has no such power, put it upon the distinct ground, that it invades the rights of the prisoner protected by the Constitution, which declares that no person shall be twice put in jeopardy; and that after a jury is empanelled and sworn in a felony case upon a valid indictment, the prisoner is then put in jeopardy; and quite a number hold, that the court may discharge the jury without the consent of the prisoner in a felony case, because he is not in jeopardy, until a verdict is rendered, and judgment entered. For an able review of the authorities *pro* and *con.* see Wharton's Cr. Pl. & Pr. section 490, *et seq.* The authorities all agree, that in a felony case, where the jury fail to agree, it may be discharged with the consent of the prisoner. His right to have the jury kept together, until a verdict is reached, is then one of that class of rights, which he can waive, and having made no objection in the court below to the discharge of the jury, in the appellate court he will be deemed to have waived the objection, and he cannot raise it for the first time here.

In the first bill of exceptions it appears, that on motion of the attorney for the State the court gave to the jury the following instruction:

"The jury are further instructed, that if they believe from the evidence beyond a reasonable doubt, that the burglary charged in the indictment was committed as therein charged, and that the prisoner committed the same, and that the property or meat of L. D. Simmons therein was stolen and carried away, and that said meat was in the prisoner's possession later in the same night, and in like manner if the jury believe from the evidence, that the prisoner within a few hours freely admitted and stated that he had broken and entered into the

building in the indictment named, and had taken or stolen the meat therefrom, then and in that event the jury should find the prisoner guilty of burglary under the first count in the indictment."

To the giving of this instruction the prisoner objected, and the objection was overruled, and the instruction given, and the prisoner excepted.

The first objection appearing to this instruction is, that it is confused in its language and well calculated to mislead the jury. If the instruction had been confined to the first clause, to-wit, "if the jury believe from the evidence beyond a reasonable doubt, that the burglary charged in the indictment was committed and that it was committed by the prisoner at the bar," it would not be objectionable; but taken altogether, the jury might have understood, that all the evidence necessary to prove that the burglary had been committed by the prisoner, was the fact that Simmons's meat had been stolen, and soon thereafter found in the possession of the prisoner, and that the prisoner freely admitted, that he had broken and entered into the building and stolen the meat therefrom, although it might appear in evidence, that the prisoner had explained the possession consistently with his innocence, and it may also have been shown, that the admissions of the prisoner were entirely false. The court will not be permitted to invade the province of the jury and must not tell them, the effect of this or that evidence introduced. (*Hurst's Case*, 11 W. Va. 74.) If it was intended to say to the jury, that if they believed from the evidence beyond a reasonable doubt, that the burglary was committed, and that the prisoner a short time thereafter was found in possession of the meat and admitted, that he had broken into and entered the building and stolen the meat, from this alone he was necessarily guilty of the burglary without reference to any other evidence in the case, it is certainly not a correct exposition of the law; for, as before stated, he might have satisfactorily explained his possession consistently with his innocence, and the evidence might have disproved his guilt or made it very doubtful, and from the evidence the jury might have believed his admission false, or that he never made such admission. It is for the jury to weigh all the evidence, and not

for the court to instruct them as to its weight and credibility. The court erred in giving the said instruction.

The second bill of exceptions shows, that the jury came into court and propounded the following question : " Has a juror a right to disbelieve a witness, whose character for truth had not been impeached by other witnesses?" and the court replied : "The jury is the sole judge of the evidence, of its weight and credibility, and in determining the weight or credit to be given to any witness may consider his demeanor on the witness-stand, contradictory statements and the probabilities of his story. The jury or juror may disbelieve any witness, but of course it would be a virtual disregard of a juror's duty to arbitrarily disregard the evidence of a witness." To the giving of which instruction the prisoner excepted. I think this instruction states the law correctly, and the prisoner could not have been prejudiced thereby. The jury could not have been misled by being told, that they ought not arbitrarily to disregard the testimony of a witness. They could not have misunderstood the court, after what it had just said, in the use of the word "arbitrarily." They doubtless understood it to mean, "that it would be a neglect of a juror's duty, to disregard the evidence of a witness without any reason therefor." If there was no reason for disbelieving the witness, of course the juror could not help believing his testimony, and if under these circumstances he disregarded his testimony, of course he acted arbitrarily and was not properly discharging his duty as a juror.

The last assignment of error is, that the jury separated, and the officers in charge were guilty of misconduct. I have carefully examined the affidavits for the prisoner and for the State, and I am not convinced, that there was any separation of the jury or misconduct of the officers in charge of the jury.

The judgment rendered in this case is reversed, the verdict of the jury set aside, and a new trial is awarded the prisoner.

THE OTHER JUDGES CONCURRED.

REVERSED. NEW TRIAL AWARDED.