# CHARLESTON.

## STATE v. KERNS.

Submitted Sept. 9, 1899—Decided Dec. 2, 1899.

1. INSTRUCTION—*Opinion.*

Instructions given by the trial court, on its motion, in a felony case, which may convey to the jury the opinion of the court as to the guilt of the accused, are improper. (p. 269.)

2. INSTRUCTIONS—*Evidence.*

Instructions asked by the accused which properly propound the law, are justified by the evidence, and present to the jury a phase of the case not presented in other instructions, should be given, and it is reversible error to refuse them. (p. 272.)

Error to Circuit Court, Tucker County.

Fred D. Kerns was found guilty of murder, and brings error.

*Reversed.*

W. H. KELLEY and J. P. SCOTT, for plaintiffs in error.

EDGAR P. RUCKER, ATTY. GEN., WM. G. CONLEY and E. M. KEATLEY, for the State.

DENT, PRESIDENT:

At a circuit court held for the county of Tucker on Thursday, the 22d day of June, 1899, Fred D. Kerns, on the verdict of a jury, was sentenced to the penitentiary for the period of his natural life for killing Lucy Day. His defense was, "Not guilty." The facts are as follows: The prisoner and the deceased were lovers. She was single. He was married, but had been some time parted from his wife, from whom he was seeking a divorce, with the ostensible object of marrying the deceased. She believed him to be single, and expected him to marry her. Their intimacy had continued for a considerable period, and resulted in sexual cohabitation between them. At the time of her death he was visiting at her parents' home, and

they occupied the same room and bed. She was pregnant. About twenty minutes of twelve o'clock, midnight, the report of a revolver was heard in their room. Mrs. Day, her mother, immediately entered the room, and found her lying on the bed, and the prisoner standing up. He said: "Mother, Lucy has shot herself. Oh, what shall I do? Oh, my God! what have I done?" To the brother coming in, he says: "Riley, here is the revolver. Shoot me, shoot me, shoot me." The prisoner stated that he was asleep, when the report of the revolver awakened him, and Lucy fell back on him; that he immediately got up, laying her back on the bed, and then her mother came in. The revolver belonged to Lucy, who kept it loaded in her trunk, with the key tied to a string around her neck. It is evidenced by one witness that on that evening he saw her take it out of her trunk and hide it about her person. The wound was directly over her heart, was burned and blackened with powder, and no blood flowed therefrom, while she lay as if sleeping. The revolver was found lying on the bed. There are many other little matters of detail brought out in the evidence which are not necessary to repeat here, as no comment on the weight of the evidence is intended. The question submitted to the jury was as to whether she committed suicide, or was killed by the prisoner.

At the instance of the state the court gave the following instruction, to which the prisoner objected, to wit: "The court instructs the jury that the term 'reasonable doubt' does not mean every vague conjectural doubt, but it is a substantial doubt—a reasonable hypothesis—arising from the evidence or lack of evidence inconsistent with the theory of the defendant's guilt." The court refused the following instruction asked by the prisoner: "The court further instructs the jury that, if any one of the facts necessary to show the guilt of the defendant is consistent with his innocence, then the jury must acquit." These instructions are equally intelligible to a jury composed of ordinary men and too many lawyers, and there is no good reason why the jury should not have them. If they have doubts of their meaning, they should give the prisoner, and not the state, the benefit of the doubt. With this under-

standing, it does not appear even doubtful that either the giving or the withholding of either of these instructions would deprive the prisoner of a fair trial. They both apparently propound the law correctly to a jurist, when carefully sifted and rightly understood, but what effect they might have to mislead and puzzle the mind of a juryman is beyond the pale of judicial discernment. The last instruction is easily understood to mean that, if there is a weak link in the chain of evidence necessary to convict, the prisoner is entitled to the benefit of the doubt thereby raised. This is undoubtedly true, and the instruction properly propounds the law; and the court, having given the state's instruction, should have given the prisoner's. The jury could as easily understand the one as the other, and thus arrive at the true hypothesis. *State* v. *Flanagan*, 26 W. Va. 117.

When the jury was about to be sent to its room, "the court, on its own motion, taking the indictment in his hand, instructed the jury in the following words, to wit: ·Gentlemen of the Jury: I think it would be proper for me to say to you that, if you should find the defendant guilty of murder in the first degree, you could further determine the mode of punishment, and say whether it should be by death, or confinement in the penitentiary for life. If you should determine that he ought to be confined in the penitentiary, you will make that a part of your finding and of your verdict. You can, under the indictment, find the defendant guilty of murder in the second degree.' Thereupon, the jury being about to retire, the counsel for the defendant suggested to the court that he ought also to say to the jury that the jury could find the defendant not guilty; and thereupon the court said to the jury: 'Of course, gentlemen, you could find the prisoner not guilty at all, if you thought the evidence justified such a finding; but in all your findings you must be governed by the evidence.'" To these remarks of the court the prisoner objected. These words might be very harmless, or they might be disastrous to the prisoner, according to the accent and manner of the court in using them. They might very easily be made to convey the sense that the court was fully convinced of the guilt of the prisoner, and for the

jury to find otherwise they must disregard the evidence. Manner and accent cannot be made part of the record, and such language, uttered at the time it was, could be made very suggestive to the jury,—at least, from which they could draw their own inferences as to the opinion entertained by the court. Hence the rule that, if such instructions or remarks may have prejudiced the prisoner, they are sufficient grounds of error to justify the granting of a new trial. *State* v. *Staley*, (W. Va.) 32 S. E. 198; *Neill* v. *Produce Co.*, 38 W. Va. 228, (18 S. E. 563); *State* v. *Cobbs*, 40 W. Va. 721, (22 S. E. 310); *State* v. *Sutfin*, 22 W. Va. 771; *State* v. *Greer*, *Id.* 800; *State* v. *Hurst*, 11 W. Va. 54; *McDowell's Ex'r* v. *Crawford*, 11 Gratt. 405. In *Dejarnette* v. *Com.*, 75 Va. 867, it was held that "no remarks which have a tendency to intimate the bias of the court on the character or weight of the testimony should be indulged in by it." "The right to a decision on the facts by the jury uninfluenced and unbiased by the opinion of the judge has been deemed worthy of a constitutional guaranty. It cannot be lawfully denied by the simple evasion of looking at the counsel, instead of at the jury." *State* v. *Harkin*, 7 Nev. 381. "From the high and authoritative position of a judge presiding at a trial before jury, his influence with them is of vast extent; and he has it in his power, by words or actions, or both, to materially prejudice the rights and interests of one or the other of the parties." *McMinn* v. *Whelan*, 27 Cal. 300, 319. The trial judge should exercise great care not to intimate in any manner his opinion upon any fact at issue. He cannot do so directly or indirectly, neither explicitly nor by innuendo. *State* v. *Dick*, 60 N. C. 440; *State* v. *Ah Tong*, 7 Nev. 152. Words in themselves may be harmless, while accent and manner may make them deadly. It was proper for the court to say that, if the jury believed the prisoner not guilty, they had the right to so find; but to intimate to them in any manner, by words, conduct, or accent, that such finding on their part was not justified by the evidence by which they must be governed, was improper, and prejudicial to the prisoner's guaranteed right of a fair trial.

The judge refused to give three several instructions in the following words, asked by the prisoner, to wit: "Be-

fore the jury can convict the defendant, it must be shown beyond a reasonable doubt that Lucy Day did not kill herself, and that the defendant did kill her." "Unless the evidence proves beyond any reasonable doubt that the prisoner killed the deceased, Lucy Day, and that said Lucy Day did not kill herself, then the jury must acquit the defendant." "The court further instructs the jury that if, after considering all the evidence and circumstances, they have a reasonable doubt as to whether the defendant, Kerns, shot and killed the deceased, or whether she shot and killed herself, then they must give the defendant the benefit of such doubt, and acquit him." The state insists that it was not an error to refuse to give these instructions, for the reason that there was no evidence justifying them, and because the usual reasonable doubt instructions had been given. The object in offering these instructions, no doubt, was to bring plainly to the attention of the jury the question as to whether Lucy Day had committed suicide. The instructions in themselves were right, for, if the jury had a reasonable doubt in their minds as to whether the deceased had committed suicide, then they necessarily had the same reasonable doubt as to whether the prisoner killed her. If the prisoner had asked the court to instruct the jury that unless they believed from the evidence, beyond a reasonable doubt, that Lucy Day did not shoot herself, they must acquit the prisoner, the court would have been bound to give it, because, if she shot herself, he did not shoot her. The instructions asked were simply to this effect, and there is apparently no excuse for their not being given. The prisoner had the right to have the question of suicide fairly presented to the jury, as there is much evidence tending to sustain it. There is no question but that a married man who deceives and seduces under the promise of marriage an innocent and confiding girl, and drives her to suicide, is worthy to suffer the highest punishment known to the law. Our laws are not so written, but this most heinous offense against society is allowed to go comparatively unpunished, for which the more righteous laws of the ancient Hebrews inflicted the death penalty. Too often the jurors of this country, actuated by a sense of natural justice, forget

the limitations of the laws by which they are governed, and, in their anxiety to punish an offender against the higher laws of moralty and decency according to his just deserts, inflict on him for a wrong the law does not punish the penalty for a crime of which he is not guilty. What more natural is it for a jury to say in a case of this character: "Lucy Day may have killed herself, and we have the most serious and reasonable doubts as to that fact; but this prisoner deceived her, seduced her, robbed her of everything worth living for, and drove her to the maddening crime of suicide to hide her shame and prevent her unborn offspring from being bastardized. Doubts or no doubts as to his guilt, he should suffer the full penalty of the law." And while all honorable men might hold up their hands and say: "So say we all. The verdict is a righteous one,"—yet the courts of the land must be governed by the laws of the land, which speak in no uncertain terms. If Lucy Day took her own life, it matters not what her provocation may have been, or how cruelly wicked and wrongful may have been the conduct of the prisoner in driving her to such a course, yet he cannot be punished for her death, but he must be remitted to the bar of that higher court whose judgments are infallible. The refusal to give these instructions cannot be accounted for except upon the theory that the trial court deemed him worthy of punishment, and that the burden was upon him to show that Lucy Day did commit suicide, and not on the State to show that she did not. They are, however, so interchangeable that to disprove one we must prove the other, and to prove one disprove the other. A reasonable doubt about one is a reasonable doubt about the other. It may be argued that the instruction given was therefore sufficient, as it necessarily involved those refused. The given instructions made no reference to the matter of suicide, and for this very reason the jury may have considered it abandoned, and given it little or no consideration. Hence the prisoner had the right to have the matter of suicide brought prominently to the attention of the jury by proper instructions. He asked for these, and the court refused to give them. This was error by which he might be prejudiced, and this court is unable to

say that he would not be. If a court is asked to give a proper specific instruction, it must do so, unless such instruction is fully and completely met by other instructions given. *State* v. *Cobb*, 40 W. Va. 718 (22 S. E. 310); *State* v. *Allen*, (W. Va.) (30 S. E. 209); *State* v. *Musgrave*, 43 W. Va. 672, (28 S. E. 813); *State* v. *Evans* 33 W. Va. 417 (10 S. E. 792).

There are some other grounds of error relied upon, which are, however, of minor importance, compared with the foregoing, and which on a retrial may be determined rightly, or prove unnecessary. The judgment is reversed, the verdict of the jury set aside, and a new trial awarded the accused and the case remanded for this purpose.

BRANNON, JUDGE:

I concur in Judge DENT's ruling as to the instructions, except that one given by the judge. Adhering to opinions heretofore written by me, I do not regard that instruction as error. I intimate no opinion as to the guilt or innocence of the accused.

McWHORTER, JUDGE:

I concur in the conclusion that the judgment should be reversed, the verdict set aside, and a new trial granted, and fully agree that "no remarks which have a tendency to intimate the bias of the court on the character or weight of the testimony should be indulged in by it," as held in *Dejarnette* v. *Com*, 75 Va. 867; but contend that, in the absence of objections or exceptions entered to the "accent and manner of the court in using" such words or remarks, the appellate court cannot assume that the trial judge, either by accent or manner in the use thereof, may have suggested to the jury his bias as to the weight of the evidence. It must be presumed that the remarks made or words spoken by the court were without bias one way. or the other, and there should not be attributed to them a meaning which the words themslves do not impart.

BRANNON, JUDGE, concurs in this note.

*Reversed.*