# CHARLESTON.

## STATE v. MANNS.

Decided December 15, 1900.

1. CRIMINAL LAW—*Change of Venue.*

Known prejudice and ill feeling towards a prisoner, extending over a large portion of a county, owing to his agency and service of process in behalf of certain persons claiming the lands of many residents of such county by superior title, and about which there is much unsettled litigation pending, is good cause for a change of venue, especially during the heat of the excitement engendered by the offense with which the prisoner is charged. (p. 481).

2. PREJUDICE—*Continuance.*

Such prejudice, ill feeling, and excitement furnish good grounds for a continuance. (p. 482).

3. INSTRUCTIONS—*Tending to Mislead.*

Instructions not justified by the evidence and tending to mislead the jury should not be given. (p. 483).

4. ERRONEOUS INSTRUCTIONS.

Instructions which do not fully state the law on a given point are erroneous and should not be given, as they tend to mislead the jury. (pp. 483, 484).

5. HOMICIDE—*Self-defense.*

While the court may instruct the jury that the burden is on the prisoner to show by a preponderance of evidence that the killing charged was in self-defense, yet it should add thereto, in effect, that such defense may be fully sustained by the evidence for the State, or by all the evidence and circumstances in the case. (p. 485).

6. INSTRUCTIONS—*Supporting Evidence.*

Instructions asked by the accused, presenting his defense, and which the evidence in any degree tends to support, should be given. (p. 487).

Error to Circuit Court, McDowell County.

Anthony J. Manns was convicted of murder, and brings error.

*Reversed.*

FLOURNOY, PRICE & SMITH, STROTHER & STOKES, and CHAPMAN & GILLESPIE, for plaintiff in error.

EDGAR P. RUCKER, ATTY. GEN., and L. C. ANDERSON, for the State.

DENT, JUDGE:

At the October term, 1899, of the circuit court of McDowell County, Anthony J. Manns was indicted and tried for the killing of C. K. Harris in the September previous, and found guilty of murder in the first degree and sentenced to be hung. The circuit court refused him a writ of error. This Court granted the same. The first error assigned is the refusal of the prisoner's application for a change of venue. The grounds are that owing to his service of numerous writs as a deputy marshal of the United States court in connection with certain suits of Henry C. King and Max Lansburg touching large surveys of land and affecting a large number of claimants and also his acting as agent for said King and Lansburg, there was a strong public prejudice against him extending throughout a large portion of McDowell County which would prevent his getting a fair trial in said county. The testimony of the witnesses fully sustains the existence of this prejudice, although a number of them state they believe an impartial jury could be found. He further claimed that this prejudice was greatly augmented and aroused by the killing, which was so recent that the excitement caused thereby had not yet subsided. If there is any case in which a change of venue should be had it is in one of this character. The deep seated prejudices growing out of these large claims has not only permeated the communities in which such lands are situated but has been felt far beyond them, and in the county of McDowell while the excitement over the killing was unabated would be though a silent yet a potential influence interfering with the impartial administration of justice, and thus denying to the prisoner that fair trial which the law of the land promises him. The depth and extent of such prejudice can never be known from surface indications, but it may secretly extend to the bounds of the county through sympathy. *State* v. *Greer,* 22 W. Va. 800; *State* v. *Douglass,* 41 W. Va. 537. The same reasons were presented on a motion for a continuance which the court overruled. The prejudices of the human heart are a dangerous thing to deal with, especially in times of passion and excitement. Their influences are deadly to right and justice.

They breed corruption, false swearing, perjury, persecution and lawlessness of all kinds. Through them the foulest of crimes have been committed and man's history by reason thereof is black with many infamous murders committed in the name of justice and claimed to be under the sanction of the Deity. Where a court has reason to believe that such dangerous prejudices exist, it should move with great caution, and not permit itself to be caught in the whirlpool thereof. The court compelled the prisoner to go to trial within less than a month of the killing, and as is plainly shown while the excitement caused thereby was still at fever heat. The prisoner sought to abate the indictment because of an alleged illegal grand jury, and tried to quash the *venire* for the petit jury, no doubt seeking any excuse sufficient to secure a continuance. He also objected to certain jurors who had made up and expressed an opinion, and while it would require evidence to change such opinion said they could give the prisoner a fair trial. Where prejudice exists such jurors to say the least are dangerous, for they may mean by a fair trial a certain hanging.

On the trial the prisoner sought to prove the dangerous character of the deceased when intoxicated. This the court refused to permit. Yet the evidence tended to show the prisoner did the killing in self-defense of his home, himself and his family. *Hamson* v. *Commonwealth,* 79 Va. 374; *Jackson* v. *Commonwealth,* Va. S. R. vol. 2, 332; Wharton's Cr. Ev., s. 84; 2 Bishop's Cr. Procedure, ss. 625, 629.

It seems hardly necessary to prove that a drunken man armed with a revolver and shooting into the prisoner's house was a person of dangerous character when intoxicated. It is certainly a matter of common knowledge in a civilized community that a man full of "fighting" whiskey and armed with a loaded revolver is *per se* a dangerous combination.

There are some other exceptions to the rulings of the court which are unnecessary to comment on at this time, as they may all be eliminated and avoided along with the foregoing in a new trial.

The principal assignment of error calling for consideration relates to the instructions given and refused by the court.

The evidence showed that Dr. C. K. Harris was intoxicated to a pugnacious degree and that he began discharging his revolver indiscriminately. That he went in his own house shoot-

ing his revolver. When he reached his office, being a rear room upstairs, he began shooting at Manns' turkeys. Mrs. Manns coming out of her house objected, and he turned on her. She fled into the house. Then she and the children being afraid of Harris left the house. When he went to the saloons, ostensibly for more whiskey, they returned to their house. Mr. Manns the prisoner, came home about this time and asked his wife why supper was not ready. She told him she was afraid to get it on account of Harris' conduct. He got it himself. While they were eating, Harris returned and began shooting again. He shot into the house, and the ball caused something to strike Manns' face. He says he thought he was shot. He immediately arose, his family scattering, and trying to hide from Harris' shooting, took his revolver in his hand, walked to the corner of the house, and fired the fatal shot. There was also evidence showing that on former occasions Harris when drunk had attacked Manns, once in his own house, and once in the street, and that there had been ill feeling between them for some time, giving rise to some threats. On this showing at the instance of the State, the court gave the following instructions, to which the prisoner objected:

"The court instructs the jury that a man is presumed to intend that which he does, or which is the immediate or necessary consequence of his acts, and if the jury believe from the evidence and all the surrounding circumstances in evidence in this case, and that beyond a reasonable doubt, that the prisoner, A. J. Manns, with a deadly weapon in his possession, without any, *or upon very slight,* provocation, shot and killed C. K. Harris, alias Dr. Harris, then the prisoner is *prima facie* guilty of wilful, deliberate and premeditated killing, and the necessity rests upon him of showing extenuating circumstances, and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State, they will find him guilty of murder in the first degree, as charged in the indictment."

"Upon a trial for murder the use of a deadly weapon being proved, and the prisoner rely on self-defense to excuse him for the use of the weapon, the burden of showing such excuse is on the prisoner, and to avail him such defense must be proven by a preponderance of the evidence."

The first is the usual instruction given in almost every case of

homocide arising out of a mutual altercation, and it propounds the law properly when sustained by the evidence, but when it is in the face of and conflicting with the evidence it has a tendency to mislead the jury. It uses the language, "Without any or slight provocation," when the evidence shows that the prisoner was suffering from great provocation. A drunken man acting in a lawless manner, by shooting a revolver from his house, had scared his wife and her children away from home, and then when the family were eating their supper, had begun shooting into the house towards the table where they were seated, and yet the jury is led to believe that this, if any, is but slight provocation in the eyes of the law. Jurors look to the court for advice as to the law, and when the court gives them an instruction, they have the right to rely on it as stating the law of the case. What in law is deemed slight provocation they do not know, and if the court uses the language above they take it for granted that the provocation, if any at all, was only slight in law, otherwise the court would not give such an instruction.

An instruction calculated to mislead the jury should be refused. *State* v. *Greer,* 22 W. Va. 800. "It is error for the trial court to give instructions prejudicial to the accused on the trial of a felony case which are not warranted by the evidence." *State* v. *Dickey,* 46 W. Va. 319; *State* v. *Cross,* 42 W. Va. 253. If the question had been propounded to the jury, do you believe that for a drunken man in an uncontrollable mood armed with a dangerous weapon to shoot into a man's house among his family is great provocation? they would no doubt have answered in the affirmative. Yet this is a question of law. The facts being proven, the law determines whether the provocation is great or slight. And the jury have the right to be told what amounts in law to great and what to slight provocation. If a man unlawfully shoot at another in a place where he has the right to be, he may repel force with force, and if he kill his assailant he cannot be convicted of murder in the first degree. Every man has the right of self-defense of himself and family, and when attacked in his home, he is not bound to flee therefrom before exercising this right, but smarting under strong provocation he may exceed the bounds set by the law, and knowingly use greater force than necessary, and yet he would not be guilty of murder in the first degree but of a lesser offense. When the provocation

is great the court should not submit to the jury the question as to whether, if any, it be slight, for thereby the jury may be easily misled into giving a verdict contrary to law.

The second instruction is equally objectionable. Not that it does not state the law correctly, but because it stops short of the law. It places on the prisoner the burden of proving self-defense, and requires him to do so by a preponderance of evidence. From the reading of this instruction the jury would be led to infer that the evidence produced by the prisoner on this issue must preponderate over that produced by the State. Such, however, is not the law. The prisoner's defense may be fully made out by the evidence for the State. The instruction follows point one of the syllabus in the case of the *State* v. *Jones,* 20 W. Va. 764. This syllabus was written to meet the claim that when self-defense was relied on the State was bound to disprove it beyond all reasonable doubt, and the court held that such was not the law, but the burden of establishing the affirmative was on the defendant, which however he might show by the State's evidence as well as his own. If on the State's evidence alone self-defense is established by a preponderance of the evidence, the prisoner is entitled to an acquittal, although he introduce no evidence on his part. This clearly appears from the second point in the syllabus referred to in the case of *State* v. *Jones.* To make a good instruction, the substance of these two points must be combined. The instruction as given is doubtful in meaning and misleading.

The prisoner asked eleven instructions. The court gave five, and refused six. Half could not be given because unequal in number, so the State had the benefit of the unequal division. Those denied are as follows

"No. 6. The court instructs the jury that before you can find the defendant guilty of murder in the first degree you must believe from the evidence that the killing of Dr. Harris was wilful, deliberate and premeditated and with malice aforethought, and was the result of cool, deliberate judgment, and previous malignity of heart, without justification, excuse, palliation or alleviation."

"No. 7. The court instructs the jury that where a homicide has been committed, and it appears from the evidence that there was an old grudge existing between the parties, but that at the time of the homicide there was a fresh and sudden provocation

given by the deceased to the defendant, then the law presumes
that such killing was causd by such fresh provocation and not
due to the old grudge."

"No. 8. The court instructs the jury that if you believe from
the evidence that the house in which defendant lived was as-
saulted by the deceased, and that the deceased shot at and into
the said house where the defendant and his family was at supper,
and if you further believe from the evidence that the prisoner
at the time had reasonable cause to believe that he, or any mem-
ber of his family, were in danger of losing their lives or suffer-
ing great bodily harm at the hands of the deceased, then the
defendant had a right to defend his house, even to the extent
of taking the life of the deceased, and if you further believe
from the evidence that the defendant killed the deceased, believ-
ing from the surrounding circumstances and the conduct of the
deceased and the fierceness of the assault of the deceased, that it
was necessary so to do to protect his house and his family, then
you should find the defendant not guilty."

"No. 9. The court instructs the jury that the dwelling-house
where a man lives is his home or castle, and that he may repel
force by force in the defense of his person, habitation or property
against one who manifestly intends and endeavors by violence to
commit a known felony on either, and in such case he is not
bound to retreat, but may pursue his adversary until he has
secured himself from all danger, and if he kill his adversary in
so doing it is justifiable self-defense."

"No. 10. The court instructs the jury that a person has a
right to repel force by force in the defense of his person, his
family or his habitation, and if in so doing he use only so much
force as the necessity, or apparent necessity, of the case requires,
he is not guilty of any offense, though he kill his assailant in so
doing."

"No. 11. The court instructs the jury that although, upon a
trial for murder, where the defendant relies upon self-defense,
in justification of the killing, the burden is upon the defendant,
yet this in nowise relieves the State from proving all the ele-
ments of murder if it seeks a conviction, beyond a reasonable
doubt, and to the exclusion of every other reasonable hypothesis,
and if, in the case on trial, the burden is upon the prisoner to
prove that he was acting in self-defense by a preponderance of
the evidence, yet this in nowise relieves the State if it seeks a

conviction from proving the prisoner guilty beyond every reasonable doubt, and to the exclusion of every reasonable hypothesis, and that if the State does not so prove the defendant guilty beyond every reasonable doubt and to the exclusion of every other hypothesis, they must find the defendant not guilty."

Careful examination of these instructions reveals no good reason why they all should not have been given, unless the court adopted the theory that there was no evidence to establish the prisoner's justification of self-defense, for the reason that the prisoner had acted if on any but slight provocation, and that therefore there was no evidence to sustain the instructions. The deceased was drunk, crazy drunk, and had been wildly shooting more than thirty times, had turned his revolver and shot into the prisoner's house and in the direction of the prisoner and his family. Now, must the prisoner patiently wait until one of his family is hit or killed, or shall he defend them? What should an ordinary man do under such circumstances? Of course a good Christian would have gone into the cellar with his family if there was one, or would have taken to the woods until sleep, gentle sleep, overcame the belligerent doctor, and then quietly slipped into his home and bed if he could have found out when the doctor was overcome by his potations. A law abiding citizen would have concealed his family and sought the aid of an officer of the peace, if he could be found. They seemed to be scarce, from the lawless way the doctor had been carrying on all day. But an average man with an average temperament would have given blow for blow, shot for shot, eye for eye, tooth for tooth, life for life. Whether the prisoner went farther than the law justifies him in doing he has the right to have an impartial jury of his peers, properly instructed as to the law to say, and he has the right to have his defense presented by proper instructions. While in some respects some of the six instructions refused are met by the five instructions given, yet no single instruction is fully covered by those given, but they are essentially different in language, so as to present the matter thereof in different phases to the jury. *State* v. *Kerns,* 47 W. Va. 266, (34 S. E. 734); *State* v. *Cain,* 20 W. Va. 679; *Honesty's case,* 81 Va. 283; *Parish* v. *Com., Id.* 1; *Stoneman's case,* 25 Grat. 900; *Carroll* v. *State,* 23 Ala. 28; *Pond* v. *People,* 8 Mich. 150; *Jackson* v. *Com.* 96 Va. 107.

The last error assigned is that the verdict is contrary to the law and evidence. As there will have to be a new trial, it becomes unnecessary for the Court to pass on the evidence as a whole or any farther than has heretofore been done, to show the relevancy of the instructions refused. So it may be said with regard to the various other assignments of error. The lower court will have opportunity to correct them all on a new trial.

For the foregoing reasons the judgment is reversed, the verdict of the jury set aside, and a new trial awarded, and the case is remanded to be further proceeded in according to the foregoing opinion and the rules and principles of law.

*Reversed.*