# CHARLESTON.

OHIO & PITTSBURGH MILK COMPANY *v.* JOSEPH SNYDER *et al.*

Submitted January 18, 1921.   Decided January 25, 1921.

1. APPEAL AND ERROR—*New Trial—Verdict Based on Mistake or Disregard of Instructions will be Set Aside, and New Trial Ordered.*

   When the evidence and admitted facts before a jury show error in their verdict which can safely be attributed to a mistake in their calculation or a total disregard of the evidence, it should on motion be set aside and a new trial awarded, and if the trial court overrules such motion, this court will on writ of error thereto by the injured party reverse the judgment and award him a new trial.

Error to Circuit Court, Hancock County.

Action by the Ohio & Pittsburgh Milk Company against Joseph Snyder and others. Judgment for defendants, and plaintiff brings error.

*Reversed and remanded.*

*E. A. Hart* and *Morton & Mohler,* for plaintiff in error.
*J. A. McKenzie,* for defendants in error.

MILLER, JUDGE:

Of the three points of error relied on by plaintiff to reverse the judgment of *nil capiat* against it, the third, that the verdict was contrary to the written evidence and the admitted facts in the case, is the only point which we need consider on the motion for a new trial, denied by the trial court. The other points, which will be referred to lastly, involve supposed errors committed during the trial, which do not affect the rights of plaintiff.

The action was in aşumpsit for a balance alleged to be· due, plaintiff upon an open account for ice cream and supplies sold and delivered to the defendants. The transactions covered the period .from May 1918 to January 1919. The factory and place of business of plaintiff was in Pittsburg, Pa., and the place of business of defendants, to which most of the ice cream was consigned, was Hollidays Cove, W. Va. Some of it, however, was on orders from defendants shipped to their customers at other points in West Virginia. The transactions amounted. in the aggregate to $6670.00.

The evidence shows that weekly statements were rendered to the defendants, generally, if not always, on Friday, and the agreement seems to have been that defendants should make weekly payments on receipt of these statements, and there was an effort on their part apparently to comply with this part of the contract, although not strictly adhered to by them. At the close of these transactions and when this suit was brought, plaintiff claimed a balance of $504.15 principal, amounting with interest to $520.11; but by an amended bill of particulars filed at rules, after adjusting some credits for commissions etc., and 'making some other slight corrections, the balance was reduced to $371.55.

Defendants kept no books. They depended solely on the debit and credit slips and statements of the plaintiff.· These in no respect disagree with the books of the plaintiff. In fact they agree exactly. The controversy before the jury was finally reduced to the question whether defendants, as they claimed, were entitled to be credited on account of goods bought. and delivered subsequently to July 5, 1918, with a check of $528.75, dated July 15th, and credited by plaintiff as of July 17, 1918. It plainly appears from plaintiff's account that it took that check of $528.75 and the allowances of express charges and commissions accrued to defendants to July 5, 1918, to balance the account as of that date. The defendants' contention before the jury was that as this check was dated July 15th, and credited July 17, ¡1918, they were entitled to credit therefor on .the account accruing subsequently to July 5, 1918, beginning with· .July 12, 1918, as shown by a statement of the account sent defendants September 6, 1918. It appears from this state-··

ment, relied on by Mrs. Snyder, the only witness for defendants, that this check was not credited on this statement as it should have been. But it plainly appears that if so credited the statement should have begun with a balance due from the preceding week ending July 5th of the same amount, instead of 65 gallons of cream, $80.00. As it took just $528.75 with the allowance of $122.75 commissions added to balance the account for the week ending July 5th, we think Mrs. Snyder knew that check was to be so applied and was applied by the plaintiff. The effect of the verdict of the jury was to give defendant credit twice for this check. This is capable of absolute demonstration, by debiting defendants with all items on their account from the beginning, and crediting them with all payments claimed including the allowances for commissions and express charges. By so doing we find the balance comes out substantially as claimed by plaintiff in its amended bill of particulars, fully sustained by the proof including that of defendants themselves.

The only plea interposed was non assumpsit. While under this plea payments may be shown, there were no specifications of payments. The whole case was tried on plaintiff's bill of particulars and the evidence of the parties presented to the jury. When in such a case the error in the verdict of the jury based on the uncontradicted facts shown in evidence can be attributed to a mistake in their calculation or a disregard of the evidence, the verdict should be set aside and a new trial awarded. *Hunt* v. *Ajax Coal Company,* 85 W. Va. 736.

The first and second points of error involve the jurisdiction of the court in the premises and the possible effect on the jury of its action during the trial in the imposition of a fine upon one of plaintiff's witnesses for a supposed contempt of the court in the manner of his responses to questions propounded by counsel. It is contended; first, that the court was without jurisdiction without issuing an attachment against the witness as provided by section 27 of chapter 147 of the Code; second, that the imposition of the fine under the circumstances shown constituted such misconduct on the part of the court as to entitle plaintiff to a new trial. In support of the latter proposition counsel cite us to a number of decisions, of which *State* v. *Kerns,* 47 W. Va. 266, is an example, to the effect that

a trial court may not by its instructions or otherwise indicate to the jury its opinion on the guilt of the accused or as to the weight or credibility that ought to be given to the evidence of a witness, or what the evidence proves. On the first proposition, we do not see that plaintiff can complain of the omission of the court to direct an attachment against the witness. That was for the witness to complain of in defending himself, if he chose to do so, against the court's action. The only thing of which plaintiff could complain in respect to the imposition of the fine on his witness was its possible effect on the credibility of his testimony. But the record shows that the court told the jury, upon objection by plaintiff to its action, that the jury should understand that the fine so imposed was not to influence them in finding their verdict on the facts. This was probably sufficient to counteract any evil effect on the verdict of the jury, but whether so or not it becomes an immaterial question, as a new trial is to be awarded on other grounds, and the result to the plaintiff is the same, for the error, if it was error, is not likely to be repeated on another trial. The record on its face does not satisfy us that the court was justified in so dealing with the witness, but whether so or not the question has become moot for the purpose of this case and need not be otherwise disposed of.

For reasons stated the judgment will be reversed, the verdict set aside and the plaintiff awarded a new trial.

*Reversed and remanded.*