# CHARLESTON.

## STATE *v.* A. S. SHAMBLIN

### (No. 6187)

Submitted April 10, 1928.　　Decided May 1, 1928.

CRIMINAL LAW—*Instruction Failing, on Face or in Connection With Other Instructions, Fully to Inform Jury Concerning Point Discussed, Should Not be Given.*

> An instruction misleading because it does not, on its face or in connection with other instructions, fully inform the jury concerning the point which it purports to discuss should not be given.
>
> (Criminal Law, 16 C. J. § 2477.)
>
> (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Putnam County.

A. S. Shamblin was convicted of first degree murder, and he brings error.

> *Judgment reversed; verdict set aside;*
> *new trial awarded.*

*C. C. Knapp* and *B. J. Pettigrew,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

LITZ, JUDGE:

The defendant, A. S. Shamblin, charged with the murder of Pearl Newman, was tried, convicted and sentenced to the

penitentiary for life on a verdict of first degree murder recommending mercy.

The defendant was at the time of the homicide a constable of Putnam county. According to his testimony, while traveling along the public road a few days before the tragedy, he was accosted and threatened by Newman. He says: "I was coming down the road and I met Pearl Newman about half way between Plymouth and down at what we call Hometown (in Putnam county). He was coming up the road in a car. I was coming down the road walking. He drove his car right up to the side of me. He stopped. He said, 'Have you got your gun and black jack on you?' I said, 'No, I haven't nothing but a gun on me. Well, he said, 'God damn you,' he says, 'I want you to get that gun and black jack both on you, for I want to take them both off of you, I want to whip you.' He said, 'I want to take that old big gun off of you and knock your head off of you;'" and that he continued his course along the highway without parleying with Newman. Shamblin states further that on the morning of July 4, 1927, while again walking along the public highway near Hometown by the residence of "Bill" Harrison, he saw Harrison and Newman, (both under the influence of liquor and Harrison with a pistol in his hand), ascending a flight of steps leading from the road to the house; that Harrison, after reaching the yard, turned and said to him, "What in the hell have you got to do with this?" That upon inquiring whether the remark was addressed to him, Harrison replied with an oath in the affirmative; that at this juncture, observing H. R. Carter, a constable of Kanawha County, approaching in a car with his wife, he signaled Carter to stop and assist him in arresting the two men; that while Carter was hesitating to join the defendant, the wife of Harrison, appearing on the scene, induced him to go into the house, but was unable to detain Newman, who turned and proceeded down the steps toward the defendant, with his hands in his hip pockets or behind him, saying: "What in the hell have you got to do with this?" that on reaching the foot of the steps at the edge of the road, the defendant called "halt" or "stop" to Newman, who, without hesitating ,continued to approach the defendant until

within a few feet of him when the defendant, after calling to Newman the second time to halt, fired a shot to warn him, and as he continued to advance fired a second shot which took effect, resulting in the death of Newman. This story is not materially changed by the other evidence. There is no denial that Harrison had a pistol, and it is not definitely shown that Newman was unarmed. It seems that the defendant, by reason of his activity in arresting those charged with violating the prohibition law, had incurred the ill-will of Newman, who appears to have been drinking with Harrison on the public road in view of persons living close by immediately before the arrival of the defendant.

The defendant complains of the two instructions granted on behalf of the State. State's instruction No. 2 reads: "The Court instructs the jury that there is no particular period during which it is necessary that malice should have existed or the prisoner should have contemplated homicide. If the intent to kill is executed the instant it springs into the mind, the offense is as truly murder as if it had dwelt there for a longer period."

Although similar instructions have been approved by this Court in particular cases, in view of the evidence and circumstances surrounding the defendant at the time of firing the fatal shot, and the absence of instructions defining murder in the first and second degrees or man-slaughter, we are of the opinion that the instruction complained of, purely abstract in form, was misleading to the jury, and therefore, constitutes reversible error. An instruction misleading because it does not, on its face or in connection with other instructions, fully inform the jury concerning the point which it purports to discuss should not be given. *State* v. *Manns*, 48 W. Va. 480; *Cobb* v. *Simon*, 119 Wis. 597, 100 A. S. R. 909.

Deeming it unnecessary to consider further other assignments of error, the judgment of the circuit court will be reversed, the verdict of the jury set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*