# CHARLESTON

## STATE v. ALDERSON.

Submitted September 3, 1914.   Decided September 15, 1914

1.  CRIMINAL LAW—*Proof of Venue—Sufficiency.*
    On a trial of one for homicide, the declarations of living wit-
    nesses, not produced, are incompetent to prove the location of a
    county line, and to establish by reputation the venue of the crime;
    nevertheless the evidence of a surveyor that he traced a line pointed
    out to him as the county line, by the marks on the trees, three
    hacks, as county lines are usually marked, in the absence of proof
    to the contrary, is sufficient for the purpose of the trial to show the
    location of the line, and the venue of the crime.   (p. 734).

2.  SAME.
    The venue of a crime need not be proven by direct evidence, but
    evidence, if legal and competent, from which the fact may be
    reasonably inferred is all that is required.   (p. 735).

3.  HOMICIDE—*Evidence—Character of Deceased.*
    Evidence that the deceased some eight days before and in the

vicinity of the homicide procured a pistol and by discharging it in the floor in the direction of his feet and in the presence of the prisoner required another member of the company to dance for the amusement of himself and others, and which was in no way connected with or related to the crime, is incompetent on the question of the violent and dangerous character of the deceased, or to characterize his acts at the time of the homicide.  (p. 736).

4.  SAME—*Evidence—Self-Defense.*

On a trial for homicide where one of the issues is self defense it is competent for the prisoner to give in evidence the state of his feelings and belief as to the conduct of the deceased at the time of the homicide.  (p. 736).

5.  CRIMINAL LAW—*Trial—Offer of Proof—Statement of Counsel—Excluded Testimony.*

And where on such trial objection is made to a question propounded to the prisoner it is not error for the trial court to refuse to allow counsel to state in the presence of the jury what he proposes to prove by the prisoner in answer to a leading question respecting his belief or intent at the time he dealt the deceased the fatal blow.  (p. 737).

6.  SAME—*Cautionary Instruction—Reasonable Doubt.*

It is improper practice on the trial of crime to tell the jury in an instruction that ''the oath of a juror imposes upon him no obligation to doubt where no doubt would exist if no oath had been administered.''  Such language is too refined, the meaning obscure, and is liable to confuse rather than enlighten the minds of the jurors, and was condemned in *State* v. *Taylor,* 57 W. Va. 283.  (p. 737).

7.  HOMICIDE—*Instructions—Evidence—Question for Jury.*

State's instructions numbered 6 and 9 state correct legal propositions, and were not erroneously given because not supported by any evidence.  (p. 737).

8   SAME—*Instructions—Exclusion of Defendant's Theory.*

On the trial of one accused of homicide, resulting in a mutual combat, in the heat of passion or hot blood, it is error in the giving of binding instructions, on the theory of self defense, and the degrees of homicide, to exclude the prisoner's theory of manslaughter.  (p. 739).

9.  CRIMINAL LAW—*Appeal—Instructions—Presentation for Review—Presumption.*

Where on a trial for homicide the record fails to show that other instructions covering the subject were given on behalf of the prisoner, but does show that proper instructions were asked and refused, if prejudicial, the judgment for such apparent error should

be reversed and a new trial awarded. The trial court, in making up bills of exception involving instructions, should make them show all the instructions given and refused. (p. 739).

Error to Circuit Court, Webster County.

Wesley Alderson, was convicted of murder in the second degree, and brings error.

*Reversed and Remanded.*

*E. H. Morton, J. S. Cogar* and *Brown & Eddy*, for plaintiff in error.

*A. A. Lilly,* Attorney General, *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, and *W. L. Wooddell,* for the State.

MILLER, PRESIDENT:

The verdict of the jury was murder in the second degree of one E. K. Smithson, and the indeterminate judgment thereon complained of was that the defendant be imprisoned in the penitentiary for not less than five nor more than eighteen years.

The first point of error made is that the State failed to prove the venue, Webster County, as laid in the indictment. The evidence of several witnesses, objected to, tended to show the location of the boundary line between that county and the adjoining county by reputation, what others, some of them living persons, had said about the line; and it was proven by one surveyor, that he had traced the line in the vicinity of the homicide for some distance by the marks on the trees, three hacks, and as so located the homicide was committed in Webster County. No evidence was offered by defendant to the contrary. The competency of this evidence is challenged on the ground that it is the hearsay of living witnesses not shown to have had any special or accurate knowledge of the location of the boundary line and whose evidence would not have been competent. Indeed, all the witnesses examined on this subject were transient persons, engaged in getting out logs for a lumber company, and whose testimony as to the boundary line, unless it be that of the surveyor, was based on what one or more of them had said to the others about the location

of the line.    These persons were not shown to have had any
special knowledge, or to have had any information from
ancient or deceased persons, or from persons who had resided
for a long time in the vicinity of the supposed line, and we
do not think their evidence was competent to show location
of the boundary line by reputation.    The testimony of Allen,
the surveyor, is however more potent.    He says that the line
pointed out to him was marked on the trees by three hacks
afore and aft, as county lines are marked, and that he traced
this line through the woods some sixteen hundred feet, finding
some twenty trees so marked.    This was more direct and posi-
tive proof of the location of the line, and in the absence of
any evidence to the contrary, we think it was evidence from
which the jury might reasonably infer that the line thus
marked was the true boundary line, and that the venue of the
homicide was properly laid in Webster County.

True, as the Attorney General argues, the venue of the
crime need not be proved by direct evidence, and it is suffi-
cient that the proof be inferential.    But the evidence from
which the fact may be reasonably inferred must be legal and
competent evidence in the case.    *State* v. *Hobbs,* 37 W. Va.
812; *State* v. *Poindexter,* 23 W. Va. 805; *People* v. *Velarde,*
59 Cal. 457, 20 Pac. St. Rep. 457.    Moreover, in cases of
public or general interest, such as the boundaries of counties,
or other political or municipal divisions, they may be estab-
lished by reputation or hearsay evidence.    2 Wigmore on
Evidence, section 1586; 1 Greenleaf on Evidence, (16th ed.)
section 135; 2 Jones on Evidence, (Blue Book ed. 1913) sec-
tion 301.    The declarations to establish such reputation must
have been of deceased, not of living, witnesses.    If living,
the witnesses themselves should be produced.    *Harriman* v.
*Brown,* 8 Leigh Anno. 1041, 1046, and note; 2 Jones on Evi-
dence, section 304a.

As we have found other error in the judgment calling for
reversal, and we think the jury may have rightfully inferred,
from the evidence of the surveyor Allen, that the venue of
the crime was properly laid, we deem it unnecessary to decide
whether the admissions of the incompetent hearsay evidence

of the witnesses as to boundary, standing alone, would be cause for reversal.

The next point of error relied upon is, that the trial court erroneously rejected evidence to the effect that the deceased Smithson, some eight days prior to the homicide, at a lumber camp in the vicinity of the homicide, procured a pistol, and in the presence of the prisoner, required another member of the company to dance by shooting in the floor in the direction of his feet after the manner sometimes practiced in mining and lumber camps. It is contended that this evidence tended to show the violent and dangerous character of the deceased, and was so nearly connected in time, place and circumstance with the homicide as to characterize the act of the deceased on that occasion, and to constitute a part of the res gestae, and admissible under the principles stated in *State* v. *Waldron,* 71 W. Va. 1. Certainly that act constituted no part of the res gestae, it bore no relation in time, place or circumstance to the homicide. The act was an isolated one. And while the conduct of deceased on that occasion was not commendatory, nevertheless it appears to have been done in good humor and for the amusement of himself and his associates, including the prisoner, and there was nothing in that conduct to show that the deceased was of a violent and dangerous character. We are of opinion, therefore, that the court committed no error in rejecting this testimony.

Another point of error urged is the refusal of the court below to permit answers to certain questions propounded the prisoner on the trial, as to his intent, his state of feelings, and his belief when his fatal act was committed. In *State* v. *Evans,* 33 W. Va. 417, it was decided, that under the statute removing his disability and permitting him to testify a prisoner is competent to give evidence of his state of feeling at the time of the homicide. The leading form of the questions may have been regarded objectionable, for immediately afterwards the court did permit the prisoner to testify fully as to his state of feeling and belief at the time he inflicted the fatal wounds upon the deceased, and this action of the court we think cured any substantial error in the rejection of the evidence on the other questions.

Another point of error made is that the court refused to allow counsel to state in the presence of the jury what the prisoner, then on the stand, would prove in answer to a leading question respecting his belief or intent when he struck deceased with his knife. The jury retired while the court heard the statement of counsel and considered the relevancy and competency of the proposed evidence. This seems to us good practice and is approved by courts and text writers, as it tends to keep from the jury immaterial, irrelevant and prejudicial matter, and to free the trial from error. 1 Thompson on Trials, (2nd ed.) section 687. Besides the matters of his belief were fully gone into by the prisoner on the return of the jury, so that nothing was done to his prejudice. The point must therefore be overruled.

Next, complaint is made of State's instructions numbered 1, 2, 6, 7, 9, 12, 18, 20, 22, 23, 24, 28 and 30. Of number 1, relating to the question of reasonable doubt, the criticism is that it contains the clause "the oath of a juror imposes upon him no obligation to doubt where no doubt would exist if no oath had been administered", apparently approved in *State* v. *Bickle,* 53 W. Va. 597, but criticised as being improper, but not calling for reversal, in *State* v. *Taylor,* 57 W. Va. 238. For the reasons given in the latter case we are of opinion that good practice condemns it and that it ought to be omitted in instructions on this subject. True, the clause, if understood, embodies a correct proposition, but the language is somewhat obscure and might not be easily comprehended by the average juror, and would tend to confuse him.

Respecting instructions 6 and 9, it is not contended that they do not state correct legal propositions when justified by the facts in a case. Number 6 is substantially the same as number 3, approved in *State* v. *Cain,* 20 W. Va. 679, 710, and number 9 is the same as one approved in *State* v. *Davis,* 52 W. Va. 224. It is said of number 6 that it assumes the important fact, not justified by the evidence, that a homicide was committed by the defendant, because of bare fear unaccompanied by any overt act of deceased, indicative of an intention on his part to kill or inflict great bodily injury on him. And of number 9 it is said that it assumes as a fact that the use of

the deadly weapon by defendant was without any or upon slight provocation, also an assumption not justified by the evidence. And it is contended that these instructions are bad, not being justified by the evidence, and for which reason they were condemned in *State* v. *Dickey,* 46 W. Va. 319, and in *State* v. *Manns,* 48 W. Va. 480.

The question then is, were these instructions erroneous because based on the false assumption of the facts? Of number 6 we do not think the criticism well founded. The first paragraph of the instruction states the proposition in the abstract correctly, but by the last paragraph it is left to the jury to say from the evidence whether the conduct of the deceased, at the time of the homicide, was of such a character as to give the prisoner reasonable ground to fear that he intended to kill or do the prisoner great bodily harm, applying the law to the concrete case. The evidence is conflicting on the subject. We think the instruction was proper in this case for the reason stated by Judge POFFENBARGER, in *State* v. *Morrison,* 49 W. Va. 211, 217.

Instruction number 9 states the law rather in the abstract. Instructions generally ought to be applied to the case presented by the evidence, but the form of this instruction has been several times approved, notably in the cases referred to, as containing a correct legal proposition. We cannot say, as was said of it in *State* v. *Manns,* that it is wholly in conflict with the evidence. As we have said of instruction number 6, the evidence is conflicting on the question of the slight provocation assumed in the instruction. It was for the jury to say from the evidence whether the provocation was slight or sufficient to justify the assault by the prisoner. We, therefore, see nothing to condemn the instruction on this score.

We see nothing wrong with instruction number 7, relating to the subject of malice. Of course it should be justified by the evidence. Instruction number 12 relates to the same subject, and we see nothing wrong with it. Instruction number 18 we do not think amenable to the criticism that it is in the abstract or unwarranted by the evidence. We think it submits the concrete case to the jury, and that there was sufficient evidence in the case to justify the submission.

Of instructions numbered 2, 20, 22, 23, 24, 28, and 30, it is said that number 23 is typical, embodying all the errors complained of in the rest, and it is said of them that they are erroneous and prejudicial because not warranted by the evidence, assume facts not justified by the evidence, and preclude the theory of manslaughter, relied upon by the defendant.   Instruction number 23 is predicated on the theory of self defense, and tells the jury that if the prisoner relies upon self defense to excuse his use of the deadly weapon, the necessity rests upon him to prove by a preponderance of the evidence and to the satisfaction of the jury the necessity or apparent necessity for him to use the weapon to protect himself from death or great bodily harm at the hands of the decedent, and that if he failed in such proof the jury should find him guilty of murder in the second degree.   This instruction is clearly binding and we think does preclude the theory of manslaughter.   The evidence shows or tends to show a sudden quarrel and combat, heat of blood, and homicide as a result, and although the jury might not have been satisfied from the evidence as to the theory of self defense, voluntary manslaughter was not an impossible verdict, and the prisoner could not be precluded from his right to a response from the jury on this issue, and in so far as this instruction and the other instructions of which it is typical preclude the theory of manslaughter, we think they are erroneous, and on another trial should be corrected.   In *State* v. *Crawford,* 66 W. Va. 114, it is said that self defense and manslaughter are not inconsistent defenses on a trial for murder.   The law on this subject is fully covered by former decisions and text writers, and we see no necessity for further discussion thereof.

Lastly, as to the defendant's instructions.   The only instructions offered by the defendant, so far as the record shows, are those numbered 5, 10, 22, 24, 25 and 28.   There is nothing in the record showing that other instructions bearing the prior and intermediate numbers were proposed or given on behalf of the defendant, but upon certiorari the clerk of the court below has certified here other instructions, which the Attorney General insists were given on behalf of the defendant.

but the record of the court itself does not speak the fact of
these instructions, and we cannot consider them as part of
the record. If they were in fact offered and given the pros-
ecuting attorney and the trial court should have seen to it
that they were embodied in a proper bill of exceptions. If
those certified by the clerk were in fact given by the court
they probably fully covered defendant's case. We do not
think it would be safe for us to infer merely from the number-
ing of the instructions rejected that others were given. In
the absence of any other instruction covering the subject we
think number 5, covering the question of the burden of proof
on the part of the State, and the necessity for establishing
every allegation beyond a reasonable doubt, was proper and
should have been given. Number 10, relating to the same
subject, but which would have authorized the jury to con-
sider the arguments of counsel on the same parity with the
evidence on the question of reasonable doubt would have been
misleading.

Instruction number 22 was rightly rejected. Nothing is
urged in argument in support of it. Instruction number 24
is bad, and was rightly rejected because it omits the element
of the prisoner's actual belief that the deceased at the time of
the homicide was about to kill or inflict great bodily harm
upon him. Instructions number 25 and 28, we think, state
correct legal propositions. Number 25 is stated in the ab-
stract, but had the approval of the court of Virginia in
*Hodges* v. *Commonwealth,* 89 Va. 265, 272-3.

On the motion for a new trial based on the alleged insuffi-
ciency of the evidence to support the verdict it would be im-
proper for us to make comment on that evidence. A new
trial will be ordered on other grounds, and on the next trial
the evidence may differ or vary, and the jury should be left
free to determine the facts from the evidence then to be pre-
sented, uninfluenced by anything that might be said thereon
by this court.

For the errors noted herein we are of opinion to reverse the
judgment and award the prisoner a new trial, and it will be
so ordered.

*Reversed and Remanded.*