*Reversed; injunction reinstated and perpetuated.*

---

# CHARLESTON.

## STATE v. PANETTA.

Submitted November 18, 1919. Decided November 25, 1919.

1. CRIMINAL LAW—*Homicide—Evidence—Identification of Coat of Deceased and Indication of Bullet Holes.*

    In a murder trial it is permissible for a witness, who saw the body of deceased shortly after the homicide and observed the bullet holes in the coat worn by him at the time he was killed and also the fatal bullet wounds on the body after it was stripped, to identify the coat and point out to the jury the bullet holes in it corresponding to the bullet wounds on the body. (p. 215).

2.  · HOMICIDE—*Evidence Showing Necessity for Self-defense.*

Where the homicide is admitted and the accused seeks to justify it on the ·ground of self-defense, it is prejudicial error to refuse to allow the accused to answer the question: "I want you to tell this jury why you shot" deceased, it appearing that she would have answered that she shot deceased to prevent him from assaulting her in her own home, and believed it was necessary to protect herself; the error in ruling out such question and two or three others of similar character in succession, when it is made to appear that the witness' answers would have been material to her defense, is not cured by permitting the witness, a little later in her examination, to answer the following question: "At the time you shot James Areno were you afraid that James Areno was going to do you harm?" (p. 216).

3.  WITNESS—*Impeachment on Collateral Matters—State Bound by Answers of its Own Witness.*

When matter material to the defense is brought out on cross-examination of one of the State's witnesses, and the State by redirect, or cross-examination seeks to discredit the witness as to the matter favorable to the defense, the State is bound by the witness' answers on such redirect cross-examination, and can not introduce evidence to impeach his statements. Neither is it permissible to impeach a witness upon matters collateral to the issue. (p. 217).

4.  CRIMINAL LAW—*Homicide—Instruction as to Form of Verdict—Permission.*

In a trial for murder it is not error for the court to instruct the jury respecting the various kinds of verdict they have the power to render, "as the evidence may warrant," including therein a verdict of not guilty, but omitting to mention a verdict for assault and battery. The omission in such instruction to tell the jury they must believe from the evidence, beyond all reasonable doubt, the guilt of the accused is established before they can render a verdict of guilty, is not error when the jury are fully advised as to the degree of proof required to convict, by other instructions. (p. 218).

5.  HOMICIDE—*Malice Essential Element of Murder—Inference from Use of Deadly Weapon.*

Malice is an essential element of murder either in the first or second degree, and where an intentional homicide by the use of a deadly weapon is admitted, the jury may infer malice, willfulness and deliberation from the act; and by legal malice is meant not only such as may exist against the deceased, but

includes such disposition of the accused as shows a heart regardless of duty and fatally bent on mischief.  (p. 218).

6.  SAME—*Existence of Malice—Time.*

Malice need not have existed for any particular length of time before the homicide, but may spring into the mind of the accused at the very instant of the commission of the act. (p. 218)..

7.  CRIMINAL LAW—*Repetition of Instructions.*

It is proper to refuse instructions upon points of law covered by other instructions given; instructions need not be repeated.  (p. 218).

8.  HOMICIDE—*Burden of Establishing Justification.*

Where the homicide is admitted and justification is relied on, the burden is upon the accused to establish it by a preponderance of the evidence, but in determining the question the accused is entitled to have the jury consider all the evidence, facts and circumstances of the case.  (p. 221).

9.  CRIMINAL LAW—*Taking Demonstrative Evidence to Jury Room.*

It is within the sound discretion of the trial court to permit weapons used in the commission of the crime and the garments worn by deceased at the time he was killed showing marks of violence, which have been identified and given in evidence, to be carried by the jury to their room when they retire to consider of their verdict.  (p. 222).

Error to Circuit Court, Mineral County.

Teresa Panetta was convicted of voluntary manslaughter, and she brings error.

*Reversed, and remanded for a new trial.*

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for the State.

*Robt. McV. Drane* and *Taylor Morrison,* for plaintiff in error.

WILLIAMS, JUDGE:

Teresa Panetta was indicted for the murder of one James Areno, tried and convicted of voluntary manslaughter, and sentenced to an indeterminate confinement in the penitentiary of not less than one nor more than five years, and she brings error.

The homicide occurred about seven o'clock on the morning of the 2nd of April, 1918, after defendant's husband had gone to

his work. She is the only eye witness to the tragedy, and swears deceased entered her house by the front door by means of a key, just after she had gotten out of bed and started down stairs. She says Areno made an indecent proposal to her, and was coming up the stairs and caught hold of her to assault her; that she pushed him back and told him to go out of the house, but that he refused to go and kept on coming up the steps toward her; that she ran up the stairs to her bed room, the door of which opened right at the head of the stairs, got her husband's revolver off the top of the dresser, just inside the door, and again told him to go, but he kept advancing toward her sidewise, with his right arm over his forehead, and she immediately fired two shots at him; that he then turned and went down stairs, and she followed him, to open the door and let him out through the kitchen; that he took hold of her again and she again shot him and he fell on the kitchen floor and expired in a few minutes. In about ten minutes afterwards, she says she went to where her husband was working, told him she had killed deceased, then went to the police station and surrendered herself to the officer. She says deceased had a key to the door, which enabled him to get in the house, but does not know where he got it; that he had previously boarded with her and her husband, but that about five months before the killing they had turned him away. She admits she shot and killed deceased, but claims she did so to protect herself from a felonious assault which he was attempting to commit upon her.

Dr. Z. T. Kalbaugh and Lee Hutchinson, an assistant undertaker, both of whom saw the body about an hour after the homicide, testify that there were three bullet wounds on the body. Dr. Kahlbaugh says, "One a slight abrasion on the left arm; one entered below the right shoulder blade and the other down the back further." Either of the two wounds in the body, he says, was fatal. Hutchinson corroborates the doctor, as to the number and location of the wounds.

The first error assigned is, that the witness Hutchinson, over defendant's objection, was permitted to point out the bullet holes in the coat and explain to the jury which of them corresponded to certain bullet wounds on the body. The instrument with which a homicide is committed and the articles of clothing

worn by the deceased, showing marks of violence, are parts of
the res gestae and admissible in evidence. This witness exam-
ined the body after it was stripped, and also saw it with the coat
on, and identified the coat as the one worn by deceased at the
time of the homicide. He was, therefore, competent to identify
the bullet holes in the coat with the bullet wounds on the body.
*State* v. *Welch,* 36 W. Va. 690, and *State* v. *Henry,* 51 W. Va.
283.

Defendant is an Italian, unfamiliar with the English lan-
guage, and had to testify through an interpreter. She was
asked this question by her counsel: "I want you to tell this
jury why you shot James Areno?" .The court sustained an ob-
jection to the question, and refused to permit her to answer it.
It was shown that, if permitted to answer, she would have said
she shot him to prevent him from assaulting her in her home,
and that she believed it was necessary to do so to protect her-
self. The question was then put in this form: "You may state
whether or not it was by reason of what had occurred there and
about which you have just told the jury that caused you to
shoot James Areno?" It was stated by counsel that she would
have answered "yes", if permitted to answer. She was then
asked the following question: "Tell the jury what James
Areno in your belief came there for?" Counsel stated, if she
were permitted to answer, she would say she believed James
Areno was about to commit an assault upon her and outrage her
person. The court sustained objections to all these questions
and refused to permit witness to answer any one of them. It
was prejudicial to defendant, we think, not to permit her to
answer at least the first of said questions. Her mental atti-
tude toward deceased, at the instant she shot him, was material
to her defense. The circumstances detailed by her may have
been sufficient to satisfy the jury that she had reasonable
grounds to believe that deceased intended to commit a felonious
assault upon her, but that alone would not justify the killing,
she must not only have had reasonable ground for such belief
but she must also have actually believed that the killing was
necessary to prevent it, and that depended upon her state of
mind, as to which she was competent to speak. In a murder
trial, where one of the issues is self-defense, the accused should

be permitted to testify concerning his belief and feelings as to the conduct of the deceased at the time the fatal shot was fired or blow was struck. *State* v. *Alderson,* 74 W. Va. 732. In *State* v. *Evans,* 33 W. Va. 418, this court held: "Since the passage of our statute permitting the prisoner to testify in his own behalf, he is a competent witness in a case of homicide to testify to the state of his own feelings when the fatal act was committed, his testimony to be taken for what the jury may think it worth."

It is true that, a little later, while she was still being examined by her counsel, defendant was asked this question: "At the time you shot James Areno were you afraid that James Areno was going to do you harm?" To this she answered, "yes". But this is not the equivalent of the other questions and answers which the court ruled out, it does not necessarily mean that she was in immediate fear of great bodily harm, or that she believed deceased was bent on committing a rape upon her person immediately, and fired the shot because she thought it was necessary to protect her person. The refusal to allow the questions and answers thereto to be given, doubtless prejudiced the jury against the defense set up by the prisoner, as her mental attitude is a part of the very essence of her defense.

The court properly refused to permit C. E. Dornon chief of police to testify that defendant's husband had complained to him, two or three weeks before the homicide, that deceased was coming to his home and annoying him, and asked him if he could not keep him away. We fail to see the relevancy of this testimony, and in addition to its apparent irrelevancy it is hearsay.

Dr. Kalbaugh testified, on cross-examination, that at the time he examined the body he also examined the privates of deceased, and discovered semen on his clothing and exuding from his penis, and that this condition indicated sexual excitement, and on redirect examination, the attorney for the state sought to elicit an admission that he might have been mistaken, that the fluid which he discovered might have been pus, and not semen. But he insisted it was semen, and explained the difference in appearance between the two fluids, and said he saw no direct evidence that deceased had gonorrhea. The state was then permit-

ted to prove by C. E. Dornon, who was present when the Doctor made the examination, that he heard him say "That thing is rotten," referring to the penis of deceased. This testimony related to a collateral matter and was admitted over the objection of defendant. It was not material whether deceased had gonorrhea at the time he was killed or not. Because it is shown that if he had that disease, it would not have prevented sexual excitement or the discharge of semen. It was pertinent for the defense to prove the presence of seminal fluid, as evidence of the sexual excitement of deceased at the time he was killed. This was corroborative of defendant's testimony respecting the attempt of deceased to commit a rape upon her. While the state's redirect examination, or cross-examination of the doctor, whichever is the proper designation of it, may have been proper for the purpose of showing that he might have been mistaken as to the presence of seminal fluid, still after he answered, the state was bound by his answer and could not contradict him. The doctor was not asked regarding this in his examination in chief, but this matter was brought out by the defense on his cross-examination, and for that purpose he might be regarded as a witness for the defense. "If the statements be collateral to the case and be drawn out on cross-examination and not in chief, the party drawing them out is bound by the answer and can not introduce evidence to contradict it." *State* v. *Goodwin,* 32 W. Va. 177. The test of whether a fact inquired of on cross-examination is collateral is this, would the cross-examining party be entitled to prove it in support of his case? 1 Wharton on Evidence, Sec. 559; *State* v. *Goodwin, supra;* and *State* v. *Sheppard,* 49 W. Va., opinion page 601. It is unnecessary to say whether this error is cause for reversal, but clearly the contradictory evidence of Dornon should not have been admitted.

The giving of the State's instructions Nos. 13, 14, 15, 17, 18, 19, 20, and 21, and each of them, is also assigned as error. These instructions are lengthy as well as familiar in cases of homicide, and it is unnecessary to burden this opinion with a quotation of them. No. 13 simply told the jury the different kinds of verdict they might render under the indictment, if they were of opinion that the evidence warranted it, beginning with murder in the second degree and going on down the scale, including

the verdict of not guilty, but omitting assault and battery. This was not error. *State* v. *Clifford,* 59 W. Va. 1. That it does not tell the jury they must believe from the evidence, beyond all reasonable doubt, that defendant is guilty before they can find her guilty of any offense is not material, it does not deal with the law of evidence, but is only for the purpose of enlightening the jury as to the various kinds of verdict that it was in their power to render under the indictment. Defendant's instruction No. 1 correctly informed the jury on the question of reasonable doubt. Moreover, defendant's counsel in their brief admit that defendant was either "guilty of murder in the first or second degree, or she was not guilty at all."

Instruction No. 14 is as follows: "The Court instructs the jury that where a homicide is proven by the use of a deadly weapon, and the plea of self-defense is relied upon, the burden of proving such defense rests upon the prisoner, and to avail her, the facts and circumstances showing such defense must be established by a preponderance of the evidence." An instruction in this exact language was approved in *State* v. *Hatfield,* 48 W. Va. 561, and it is applicable to the proven and admitted facts in this case. Defendant admits killing deceased by shooting him with a revolver, and her plea is self-defense. The law places upon her the burden of proving her defense, and she is entitled to the benefit of the state's evidenc as well as her own in establishing it. *State* v. *Gravely,* 66 W. Va. 375; *State* v. *Waldron,* 71 W. Va. 1, opinion page 11. The instruction does not deny defendant the benefit of the state's evidence that may be favorable to her. It is sufficient if such preponderance in her favor appears from all the testimony and circumstances in the case. *State* v. *Mann,* 48 W. Va. 480, and *State* v. *Donahue,* 79 W. Va. 260.

Instructions Nos. 15, 17, and 18 are on the subject of malice, and, in effect, told the jury it was necessary that malice should exist in order to convict one of murder, but that, if the accused shot and killed deceased, the intent, malice, willfulness and deliberation may be inferred from the act, and that malice need not exist against any particular person, but may be such as shows a heart regardless of duty and fatally bent on mischief; nor was it essential that malice should have existed for any

length of time before the killing, but is sufficient if it springs into the mind the very instant the accused did the killing. These instructions were proper. *State* v. *Douglas,* 28 W. Va. 297; and *State* v. *Welch,* 36 W. Va., opinion pages 697-8.

It is insisted that instruction Nos. 19, 20 and 21 should not have been given, because it is claimed there is no evidence to support them. These instructions define voluntary manslaughter, and there is no complaint that they do not state the law correctly. Defendant's own testimony respecting the cause and manner of the homicide is enough to justify the jury in believing that there was an altercation and heat of passion caused by such provocation. This assignment is also overruled.

The refusal to give defendant's instructions Nos. 2, 7, 8, and 10 is also assigned as error. The court was justified in refusing all of these instructions, except No. 10, because the points are covered by others given, which are more appropriate to the case as shown by the evidence. Defendant's No. 10 was properly refused because it does not correctly state the law. It reads as follows:

"The Court instructs the jury that the defense interposed by the prisoner in this case is that of self-defense and that if, upon consideration of all the evidence, they believe that the defendant has made out such defense, they should find a verdict of not guilty; and the jury is further instructed that if, upon consideration of all the evidence, they are not fully satisfied that self-defense has been established but have a reasonable doubt that the plea of self-defense is made out, it is their duty to acquit the defendant."

The last half of the instruction, beginning at the semicolon, does not state the rule of evidence correctly in regard to proving self-defense. Where a homicide is intentionally committed, as in this case, and the defendant seeks to justify it, it is his duty to prove it to the satisfaction of the jury, or it must appear to their satisfaction from all the facts and circumstances in the case; and if the jury are not satisfied that such defense is established by a preponderance of all the evidence, they are not justified in acquitting the prisoner. The killing with a deadly weapon being admitted by defendant, the burden of proving justification shifted to her, and the rule of reasonable doubt has

no application to that issue. The admission rebuts the presumption of innocence which is the basis of the rule requiring sufficient evidence to satisfy the jury beyond all reasonable doubt of guilt. 2 Bishop New Crim. Proc., Sec. 1095; 3 Bishop New Crim, Proc., Sec. 599; 13 R. C. L. 908; *State* v. *Abbott,* 8 W. Va. 741, 763-6; *State* v. *Jones,* 20 W. Va. 764; and *State* v. *Dillard,* 59 W. Va. 197.

The court permitted the jury, over the objection of defendant, to take the coat worn by deceased at the time he was killed to the jury room, and this is assigned as error. It has always been permissible to exhibit to the jury, on a trial for homicide, the weapons used and any of the apparel of the slayer or the deceased showing blood stains or other marks of violence, to be inspected by them. Deceased's coat was exhibited to the jury and the witness who identified it pointed out the bullet holes in it. It appears to have been the practice at common law for the trial court, within his sound discretion, to allow such articles, as well as written documents under seal used in evidence, to be taken by the jury to their room. *Hopkins* v. *State,* 9 Okla. Crim. 104, 36 Anno. Cases, (1915B), and extensive notes beginning on page 742; 16 C. J. 1083; 2 Bishop New Crim. Proc., (2nd ed.), Sec. 982a; Hocheimer on Crimes and Crim. Proc., Sec. 250; and 12 Ency. Pl. & Pr., 589. The modern rule, respecting the kind of written documents that have been introduced as evidence that may be allowed to go to the jury room, is not uniform. See 2 Thompson on Trials, (2nd ed.), Secs. 2595-6-7; also discussion of the subject by Judge BRANNON in *State* v. *Stover,* 64 W. Va., beginning at page 670.

Counsel for defendant argue that, inasmuch as we have had a statute permitting papers read in evidence to be carried by the jury to their room when they retire to consider of their verdict, other articles are impliedly excluded. This is a non-sequitur. This statute originated in Virginia at an early day, and was adopted by West Virginia at its formation. As first enacted it read as follows: "Papers read in evidence, though not under seal, may be carried from the bar by the jury." The clause, "though not under seal," indicates that the purpose of the statute was to include such papers as were not permissible to be taken to the jury room, under the common law practice, and

·has no relation to other articles of evidence, not in writing, as to which there was no necessity for a statute authorizing such use of them. As originally enacted it was held the statute did not include depositions, *State* v. *Cain,* 20 W. Va. 679 and *Welch* v. *Franklin Ins. Co.,* 23 W. Va. 282, and opinion at page 309; and in 1882 the legislature of West Virginia amended it so as to include depositions.

It would be improper for the jury to experiment with an article which had been introduced in evidence out of the presence of the accused, in a manner otherwise than had been shown in the trial, for such would be, in effect, taking evidence out of the presence of the accused. Note to *Hopkins* v. *State, supra,* at page 744, Anno. Cases; and 12 Ency. Pl. & Pr. 590. But it is impossible to conceive of any improper experimentation the jury could have made with the coat. It was a dumb witness that told but one story without variation. The trial judge did not abuse his discretion in permitting the coat to be carried to the jury room.

Having to remand the case for another trial on account of the error hereinbefore pointed out, it would be improper to enter upon a discussion of the assignment of error based on the want, or insufficiency of the evidence.

*Reversed and remanded for new trial.*