# CHARLESTON.

## STATE v. ED. ARRINGTON.

Submitted March 1, 1921.    Decided March 8, 1921.

1. CRIMINAL LAW—*Accused May Testify as to His Feelings as to Decedent and His Motives.*

    In a trial for homicide, where one of the issues is self defense, it is competent for the accused to testify concerning his belief and feelings as to the conduct of the deceased at the time of the killing, and to state the motive or purpose which prompted him to fire the fatal shot. (p. 154).

2. HOMICIDE—*On Issue of Self Defense Uncommunicated Threats Against Accused Held Admissible.*

    Where, on a charge of homicide, the excuse is self defense, and the testimony is conflicting as to the aggressor, there being some to show that it was the deceased, his threats against the accused though not communicated to the latter, are relevant and admissible to show the deceased's attitude of mind shortly prior to the combat. (p. 155).

3. SAME—*Evidence That Deceased Was Unarmed Admissible on Issue of Self Defense.*

    Where self defense is an issue in a trial for homicide, evidence that the deceased was unarmed at the time of the killing is admissible. (p. 156).

4. SAME—*Deceased's Good Character Assumed Until Attacked by Defense.*

    Until attacked by the defense, the deceased's character for peaceable and quiet conduct is presumed to have been good, and the state may not make it a subject of primary proof. (p. 156).

5. SAME—*Uncommunicated Threats Held to Justify Admission of Evidence of Prior Good Character.*

    But evidence of uncommunicated threats by the deceased to do bodily harm to the accused constitute a direct attack upon his reputation for quiet and peaceable conduct, and in conjunction with other testimony tending to show some aggression on his part, justify the admission of evidence of prior good character, in order to create a countervailing inference that he was not the aggressor. (p. 156).

Error to Circuit Court, Wyoming County.

88 W. Va.

Ed. Arrington   was convicted of second degree murder,. and he brings error.

*Reversed and remanded.*

*Grover C. Worrell, J. M. McGrath* and *R. E. Hughes,* for plaintiff in error.

*E. T. England,* Attorney General and *R. A. Blessing,* Assistant Attorney General, for the State.

LYNCH, JUDGE:

From a judgment of twelve years' imprisonment in the penitentiary upon a verdict of a jury for second degree murder, Ed. Arrington, defendant, prays to be released and the case resubmitted to another jury for retrial.   He shot Mike Yek February 9, 1920, at Iroquois, Wyoming County, and from the wound so inflicted Yek died a moment later. Those who witnessed the tragedy, besides deceased, were Albert Foy, Okey Helmandollar and defendant Arrington, each of whom testified in the order named, Foy on behalf of the State, the other two on behalf of the defendant.

Foy's version of the affair is substantially this: He was walking along the street about eight o'clock in the evening, and had just passed defendant and Helmandollar going in the opposite direction, when Yek approached them, Foy then being not more than 18 feet distant from them.   He heard one of the two men say: "Who is that?", to which the other responded: "Some d—n sneak," but was unable to determine which of the two was the questioner and which made the response.   Immediately "they commenced to mix up a little, * * * and this fellow Yek run back a little piece; I don't know whether Arrington hit him or not; and he (Yek) had his hand on his hip; I don't know whether he had his hand in his pocket, or whether he was pulling up his pants. * * * He started toward Arrington, and I saw the pistol," and then the shot was fired.

Helmandollar and defendant substantially agree in their statement of what occurred.   The former was standing not more than 12 feet from Arrington when Yek approached. According to their story, Yek said to defendant: "Where

are you going?''; to which the latter replied: "I am going up the road;" and Yek responded: "You are a d——d liar;" whereupon a conflict occurred. Yek stepped back a few paces, then started towards defendant with his hand in his hip pocket. The latter says he heard some one, he does not know who, say: "Look out, Ed!"; and "I jerked out my gun and shot."

The first assignment of error goes to the sufficiency of the indictment, but we see no serious defect in it, and defendant has not pointed out any. The next assignment likewise was not discussed by defendant or relied on by him before this court, and we are unable to perceive any possible ground of prejudice to him in permitting Mrs. Yek to state what little she knew of the fatal shooting of her husband, namely, the hour when he left home to go to the store, when next she saw him and his condition at that time, the location of the wound, his age, nationality, occupation and children. However, proof of the number, names, ages and condition of the children or their mother can have no relevancy to the issues involved in a trial for homicide.

Assignments 3, 4, 5 and 6 present the question whether the court erred in refusing to permit defendant to testify before the jury as to his purpose in firing the fatal shot. He was asked: "Now what was your purpose in firing the gun?" The court refused to permit him to answer, except for the purpose of completing the record, and his reply then was: "To save my own life." He was asked further: "Did you have any other purpose in firing the shot?", and after a similar refusal to permit his answer to go to the jury, he replied, on the record; "No." Since malice, express or implied, is an essential element of murder in the first or second degree (*State* v. *Douglass,* 28 W. Va. 297; *State* v. *Panetta,* 85 W. Va. 212, 101 S. E. 360; *State* v. *Galford,* 87 W. Va. 358, 105 S. E. 237), defendant had the right to disprove it in any legitimate manner. His mental attitude towards deceased at the instant he shot was material to his defense. In a trial for homicide, where one of the issues is self defense, it is competent for the accused to testify concerning

his belief and feelings as to the conduct of the deceased at the time of the killing, and to state the motive or purpose which prompted the fatal shot.     These statements should have gone to the jury, to be considered by them in connection with other facts and circumstances in the case, and to receive such weight and credence as in their opinion they merited.     *State* v. *Evans,* 33 W. Va. 417; *State* v. *Alderson,* 74 W. Va. 732; *State* v. *Panetta,* cited.

Assignments 7, 8, 9 and 10 involve questions relating to the admissibility of threats by the deceased to do bodily harm to the accused, made in the presence of other persons, but not communicated to him. Evidence of communicated threats tends to throw light upon the mental attitude of the accused towards deceased, while uncommunicated threats serve a reverse purpose, namely, as evidence of the mental attitude of the deceased towards the accused.     Where the chief defense of the latter is self defense, it is of prime importance to determine which of the parties to the combat was the aggressor.     If the accused, then undoubtedly such threats would not be admissible, for his aggression would of itself constitute an express refutation of any implication of self defense that might arise from threats of  the accused. But where the evidence is conflicting as to the aggressor, proof tending to show the state of mind of the deceased at a time not unreasonably remote from the date of the combat is relevant and material in determining whether or not it was he who forced the fighting. Uncommunicated threats of course disclose nothing with regard to the accused's state of mind at the time of the homicide, but they possess an evidentiary value in this, that they show a prior mental condition of deceased which, if continued to the date of the combat, might have prompted him to carry out his design.     *State* v. *Evans,* 33 W. Va. 417; *State v. Lutz,* 85 W. Va. 330, 101 S. E. 434; Wharton on Homicide (3d Ed.) § 246; 21 Cyc. 893.     See also *State* v. *Waldron,* 71 W. Va. 1.     Professor Wigmore in his work on Evidence, vol. 1, § 110, says:     "Where on a charge of homicide the excuse is self defense, and the controversy is whether the deceased was the aggressor, the deceased's threats against the accused are relevant.     The de-

ceased's design to do violence upon the defendant is of some value to show that on the occasion in question he did carry out, or attempt to carry out, his design. Moreover, it is the fact of his design, irrespective of its communication to the defendant, that is evidential.'' Because of the opportunity afforded for abuse of this character of evidence, courts generally have placed certain limitations and restrictions about its introduction, many holding it to be admissible only where there is some other evidence of an aggression by deceased. 1 Wigmore on Evidence, § 111; 1 Michie on Homicide, § 190. We need not now determine whether such a limitation would be proper in every case and under all circumstances, for there is in this case evidence, not much perhaps, but some, that deceased took an active part in the fighting. The state's witness Foy admits that he was advancing upon accused at the instant the latter shot. For these reasons the testimony should have been admitted.

The 11th assignment is not well taken, because, where self defense is an issue in a trial for homicide, evidence that the deceased was unarmed at the time of the killing is admissible. 21 Cyc. 955, note 71; 1 Michie on Homicide, § 193 (2).

The remaining assignments of error, in so far as they are material upon this review, relate to the admissibility of evidence of the previous good character of the deceased, introduced by the state. Until attacked by the defense, the deceased's character for peaceable and quiet conduct is presumed to have been good, and the state may not make it a subject of primary proof. 1 Wharton's Criminal Evidence (10th Ed.) § 57; 13 R. C. L., Homicide, § 219.

There was no evidence admitted at the trial, on behalf of the accused, assailing the character of the deceased; hence the court erred in permitting the prosecution in rebuttal to introduce evidence of his good character. Until it is assailed, the presumption is that it was good, and no proof thereof is necessary. But we have just held that the court improperly excluded evidence, offered by the defense, of uncommunicated threats of the deceased to do the prisoner harm, and upon the new trial which we are compelled to

award such testimony doubtles will again be offered.    Is not that a sufficient attack upon the deceased's character to justify the admission of rebuttal testimony of his good character.    We think it is.    As already noted, evidence of uncommunicated threats is admissible to show the attitude of mind of the deceased, and to aid the jury in determining who was the aggressor in the fight.    Such testimony is a direct attack upon his reputation for quiet and peaceable conduct, and evidence of good character in that regard may be admitted to rebut it and to create a countervailing inference that he was not the aggressor.    *Crawley* v. *State,* 137 Ga. 777; *Vernon* v. *State,* 146 Ga. 715; *State* v. *Vacos,* 40 Utah 169; *Davis* v. *People,* 114 Ill. 86; *Russell* v. *State,* 11 Tex. Cr. 288; *Canon* v. *State,* 59 Tex. Cr. 398; *Berry* v. *State,* 73 Tex. Cr. 203; *Hussey* v. *State,* 87 Ala. 121; *Weaver* v. *State,* 83 Ark. 119; *State* v. *Feeley,* 194 Mo. 300; 1 Wharton's Criminal Evidence (10th Ed.) § 57; 21 Cyc. 908; 1 Michie on Homicide, § 163 (2b), p. 683.    Again referring to Wigmore on Evidence, vol. 1, § 63, the author says: "When the issue of self defense is made in a trial for homicide, and thus a controversy arises whether the deceased was the aggressor, one's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's action. * * * In the present use, this additional element of communication is unnecessary; for the question is what the deceased probably did, not what the defendant probably thought the deceased was going to do. The inquiry is one of objective occurrence, not of subjective belief." See also *State* v. *Waldron,* 71 W. Va. 1. Generally, as Professor Wigmore suggests, in order to avoid abuse, there ought to be some other appreciable evidence of the deceased's aggression before such character evidence should be admitted; but evidence of the threats introduced by the defense, and other testimony relating to his active part in the fight, are sufficient to justify its admission in this case.

For the reasons stated, we reverse the judgment, set aside the verdict, and award defendant a new trial.

*Reversed and remanded.*