STATE OF WEST VIRGINIA

*v.*

HELEN SANDERS

(No. 13838)

Decided March 28, 1978.

*Wilson, Frame, Rowe & Jolliffe, Clark B. Frame, Steptoe & Johnson, Carl F. Stucky, Jr.* for plaintiff.

*Chauncey H. Browning,* Attorney General, *Paul T. Farrell,* Assistant Attorney General, for defendant.

McGRAW, JUSTICE:

At approximately 6:30 a.m. on September 24, 1975, the defendant shot and killed her husband, Craig Sanders, as he returned to the door of their home after having taken the dog for a walk. Her defense at trial was that she was not guilty by reason of insanity. On December 15, 1975, in the Circuit Court of Monongalia County, she was found guilty of first-degree murder with the recommendation for mercy and is now confined to the West Virginia State Prison for Women.

## I

The defendant assigns as error certain instructions offered by the State and given to the jury.[1] State's In-

---

[1]      STATE'S INSTRUCTION NO. 1

The Court instructs the Jury that when a homicide is proven, it is presumed to be murder of the second degree, and that the burden is upon the State to elevate it and upon the defendants to reduce it.

STATE'S INSTRUCTION NO. 2

The Court instructs the jury that a man is presumed to intend that which he does or which is the immediate or necessary consequence of his act; and if you believe beyond a reasonable doubt that Helen Sanders, with a deadly weapon in her posssession, without any or upon very slight provocation, intentionally gave to the deceased, Craig Sanders, a mortal wound, the defendant is primar facie guilty of willful, deliberate and premeditated killing and the necessity rests upon her of showing extenuating circumstances, and unless she proves such extenuating circumstances, or such circumstances appear from the case made by the state, she is guilty of murder in the first degree and you should so find by your verdict.

STATE'S INSTRUCTION NO. 4

The Court instructs the Jury that the "malice aforethought" necessary to constitute the crime of murder may be either express or implied. The word "malice" in the foregoing definition of murder is used in a technical sense, and includes not only anger, hatred

structions Nos. 1, 2 and 4 are essentially the same as Instructions D, E and B respectively, discussed fully in *State v. Pendry*, ____ W.Va. ____, 227 S.E.2d 210 (1976). Furthermore, State's Instruction No. 5 was repetitious of No. 4 and State's Instruction No. 7 was repetitious of No. 2. Thus, these instructions are fatally defective, and we reverse under the law well-enunciated in syllabus point 4 of *State v. Pendry, supra*, and in syllabus point 1 of *Jones v. Warden*, No. 14010 (W.Va. Jan. 17, 1978):

> In a criminal prosecution, the state is required to prove beyond a reasonable doubt every material element of the crime with which the defendant is charged, and it is error for the court to instruct the jury in such a manner as to require it to accept a presumption as proof beyond reasonable doubt of any material element of the crime with which the defendant is charged or as

and revenge, but every unlawful and unjustifiable motive. It is not confined to ill will to any one or more particular persons, but is intended to denote an action flowing from any wicked and corrupt motive, done with an evil mind and purpose and wrongful intention, where the act has been attended with such circumstances as to carry in them the plain indication of a heart regardless of social duty and deliberately bent on mischief; therefore, malice is implied by law from any wilful, deliberate and cruel act against another, however sudden. Thus, on a charge of murder, malice is presumed from the fact of killing, when the killing has been proved and is unaccompanied by circumstances of palliation, and the burden of introducing evidence to rebut such presumption rests upon the accused.

STATE'S INSTRUCTION NO. 5

The Court instructs the Jury that whenever the killing is wilful, deliberate and premeditated, the law infers malice from this fact.

STATE'S INSTRUCTION NO. 7

The Court instructs the Jury that if they believe from the evidence that the defendant, with a deadly weapon in her possession, without any or upon slight provocation gave the deceased a mortal wound from which he died, the defendant was prima facie guilty of wilful, deliberate and premeditated killing and the necessity of showing extenuating circumstances rested upon the defendant, or they must appear from the case made by the State, otherwise she was guilty of murder in the first degree, although no motive for the crime was disclosed or any ill feeling shown to have existed between the parties.

requiring the defendant either to introduce evidence to rebut the presumption or to carry the burden of proving the contrary.

Having expressed the basis of our holding in this case, we will next examine certain points raised to assist the lower court on retrial of this case.

## II

At approximately 8:30 a.m., after being taken into police custody an hour earlier, the defendant was removed to the West Virginia University Medical Center where she was examined and treated by four doctors. She told the physicians in the emergency room that she had tried to commit suicide by swallowing 25 tablets of Valium. The staff psychiatrist was called in, and he wrote on her medical chart that she was "suicidally depressed and mentally ill." One attending doctor testified that all the physicians agreed that she was physically unable to leave the emergency room in the custody of the deputy sheriff. At one point her stomach was pumped.

Shortly thereafter at approximately 10:30 a.m., a friend of the defendant, Rebecca Hall, visited the defendant in the hospital as part of a "mutual agreement" between her and her employer, Mr. Gene Sanders, brother and business partner of the victim. She testified that she had known the defendant for twenty-five years and went to visit in order to "see how she was, and to be with her until part of her family got there."

During the course of the visit, the defendant made some incriminating remarks to Mrs. Hall.[2]
At trial, the defense requested an *in camera* hearing to

---

[2] Mrs. Hall's testimony was as follows:

"She [Mrs. Sanders] said that no one would forgive a murderer, and I said, 'yes, he can help you if you ask him [meaning Jesus], to forgive you, and if you ask him, and if you will pray.' She went on to say that she had twenty-five years of unhappiness.

"She said that she had been thinking about this for some time. I don't know what she meant by that.

"She said that he treated me like a dog at times. That is about all that I can remember."

have the trial court determine the voluntariness of the statements made. The court refused the motion, and the witness was permitted to recount to the jury what was said by the defendant.

The cases in this jurisdiction mandate that an *in camera* voluntariness hearing be held before admitting incriminating statements into evidence. This rule is exemplified by syllabus point 2 of *State v. Smith*, ____ W.Va. ____, 212 S.E.2d 759 (1975):

> "The presentation to a jury of incriminating and damaging statements which amount to admissions of part or all of an offense, allegedly made by the accused, without first having permitted a determination of the voluntariness thereof out of the presence of the jury, constitutes reversible error."

Further support for this requirement is found in *State v. Johnson*, ____ W.Va. ____, 226 S.E.2d 442 (1976); *State v. Starr*, ____ W.Va. ____, 216 S.E.2d 242 (1975); *Spaulding v. Warden*, 212 S.E.2d 619 (1975) and *State v. Fortner*, ____ W.Va. ____, 148 S.E.2d 669 (1966).

We are aware that in each of the above-cited cases the incriminating confessions or admissions were made to police officers and not to mere friends or visitors. Therefore, if the sole purpose for the *in camera* voluntariness hearing is to deter, discover, or punish undesirable police conduct, then we might be inclined to distinguish those cases from the one at bar.

But should the right to an *in camera* voluntariness hearing depend upon the identity of the party to whom the admission or confession is made? We think not. One can involuntarily make an admission or a confession to any listener. Since the focal point of the inquiry is whether the statement is voluntary,[3] the courts require

---

[3] [D]ecisions of the Supreme Court [suggest] that voluntariness has an independent psychological significance that extends beyond its use as a shorthand description of improper police techniques. It is said, for example, that regardless of the fairness of the conduct of government officials, a suspect must be insured "a free choice to

an *in camera* hearing in such cases. *E.g., State v. Cooper,* 286 N.C. 549, 213 S.E.2d 305 (1975) (defendant confesses in emergency room to murdering wife and children); *McElroy v. State,* 204 So.2d 463 (Miss. 1967) (defendant accused of grand larceny confesses to property owner who visits him in jail.) While the identity of the listener is an important factor to consider, it should not be determinative of the right to an *in camera* judicial determination of voluntariness in this case.

We hold, then, as follows: In a trial for murder where the defendant raises insanity as the sole defense, the court upon request should conduct an *in camera* hearing to determine whether incriminating statements made by the defendant to a third party while in a hospital emergency room shortly after committing the homicide, attempting suicide, and having been diagnosed by the attending staff psychiatrist as "suicidally depressed and mentally ill," were voluntary and admissible into evidence.

### III

The defendant assigns as error the trial court's refusal to ask three of the six voir dire questions they proposed.[4] She argues that the only issue at trial was her

---

admit, to deny, or to refuse to answer." *[Lisenba v. California,* 314 U.S. 219, 241 (1941).] To be admissible, a confession must proceed from a "rational intellect and a free will"; *[Blackburn v. Alabama,* 361 U.S. 199, 208 (1960)]* it must be the "offspring of a reasoned choice." *[United States v. Mitchell,* 322 U.S. 65, 68 (1944).]* Schaefer, *The Suspect and Society* 12 (1967) as quoted in III Wigmore, Evidence § *826* (Chadbourne rev. ed. 1970).

[4]     VOIR DIRE QUESTION NO. 2

Are there any members of the jury who have a bias or prejudice against psychiatrists, that is doctors who study mental disease and disorders, to such an extent that you could not fairly consider their testimony and opinions and give them like weight with other evidence and testimony in the case?

VOIR DIRE QUESTION NO. 3

Are there any persons on the jury who have a bias or prejudice either for or against persons suspected of having a mental illness or defect such that they would not be able to fairly sit as a juror in a case wherein the defendant was suspected of having such mental disease or defect?

mental capacity and since her entire case rested upon the testimony of Dr Allen, a psychiatrist, the three rejected inquiries went to the very heart of her case. These questions, she contends, were designed to uncover possibly prejudicial attitudes toward this sole issue before the jury.

W.Va. Code § 56-6-12 guarantees that the "court shall on motion of [either] party, examine on oath any ... juror ... to know whether he is a qualified juror ... or is sensible of any bias or prejudice therein ..." The object of this statute, characterized in *State v. Pendry, supra* at 216, as "one of the most progressive statutes found anywhere on the subject," is to secure jurors whose minds are wholly free from bias or prejudice either for or against the accused. *State v. Messer*, 99 W. Va. 241, 128 S.E. 373 (1925); *State v. Dushman.* 79 W.Va. 747, 91 S.E. 809 (1917); *State v. Hatfield*, 48 W.Va. 561, 37 S.E. 626 (1900). The method of achieving this goal is more fully discussed in our most recent decision on voir dire in *State v. Pendry, supra* at 217:

> It may frequently become necessary for the trial court or counsel to go into particular matters which may be the subject of biased or prejudiced views in order to determine whether the juror in fact, even without his own knowledge, may have a demonstrable bias or prejudice which would operate to the disadvantage of one of the litigating parties.

Such is the case at bar where the sole defense to the murder charge, insanity, is based primarily upon the testimony of a psychiatrist. Upon request, the court in this case should have asked the jurors in voir dire

VOIR DIRE QUESTION NO. 4

If you are satisfied by a preponderance of the evidence in this case that Mrs. Sanders, at the time of shooting Craig Sanders, did so as a result of a mental disease or defect and lacked substantial capacity either to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of law, would any juror be unable to return a verdict of "not guilty" by reason of such mental disease or defect at the time of the crime?

whether they have a bias or prejudice against psychiatrists or against persons suspected of having a mental disease or defect. The trial court, then, at minimum, should have asked Defendant's Voir Dire Questions Nos. 2 and 3.

## IV

At trial, the defense attorney asked the defendant, "Helen, when Mr. Sanders was shot, do you recall intending to shoot him?" The state immediately objected, and the court sustained the objection.

Citing several civil and criminal cases from this state, the defendant on appeal argues that her state of mind was the sole issue at trial and that the court's refusal to allow her to testify as to her intent, an essential element of the crime of murder, constitutes reversible error.

The existing criminal law on the point is expressed in syllabus point 1 of *State v. Arrington*, 88 W. Va. 152, 106 S.E. 445 (1921):

> In a trial for homicide, where one of the issues is self-defense, it is competent for the accused to testify concerning his belief and feelings as to the conduct of the deceased at the time of the killing, and to state the motive or purpose which prompted him to fire the fatal shot.

This well-established rule has been expressed in several murder cases involving self-defense. *State v. Panetta*, 85 W.Va. 212, 101 S.E. 360 (1919); *State v. Alderson*, 74 W. Va. 732, 82 S.E. 1021 (1914); *State v. Evans*, 33 W.Va. 417, 10 S.E. 792 (1890).

There is no reason why this rule permitting a defendant to testify as to his intent should be limited to cases where self-defense is raised, considering the basis for the rule as expressed in *State v. Arrington, supra* at 154, 106 S.E. at 446:

> Since malice, express or implied, is an essential element of murder in the first or second de-

gree [citations omitted] defendant had the right to disprove it in any legitimate manner. His mental attitude towards deceased at the instant he shot was material to his defense.

The overwhelming weight of authority in this country is that in a civil[5] or criminal case a witness may testify as to his own intent or motive whenever the intent or motive of such person is in issue. 1 S. Gard, *Jones on Evidence* § 4.55 (6th ed. 1972); 2 J. Wigmore, *Evidence* § 581 (3rd ed. 1940).

In the case at bar the defense raised to the charge of murder was that the defendant at the time of the killing suffered from a mental disease or defect which caused her to lack substantial capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of law. Her mental state at the time of the killing was thus an issue of utmost importance to her defense. The court should have allowed her to testify as to whether she could recall intending to shoot her husband, and in the event she could recall her intentions, she should have been permitted to state what they were.

*Reversed and remanded*
*for a new trial.*

---

[5] This majority rule has been uniformly applied in civil cases in West Virginia. *Gault v. Monongahela Power Co.,* ___ W. Va. ___, 223 S.E.2d 421 (1976) (defendant in personal injury case permitted to testify as to his intention to return to work); *Peck v. Bez,* 129 W. Va. 247, 40 S.E.2d 1 (1946) (defendant sued for punitive damages permitted to testify as to whether he intended to injure plaintiff); *Goodman v. Klein,* 87 W. Va. 292, 104 S.E. 726 (1920) (defendant in malicious prosecution action permitted to testify as to her intentions or motive).