# Richmond

## ROBERT EDWARD LEE v. COMMONWEALTH OF VIRGINIA.

October 11, 1948.

Record No. 3415.

Present, All the Justices.

*Douglas S. Mitchell* and *John E. DeHardit*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Ballard Baker, Special Assistant to the Attorney General*, for the Commonwealth.

Gregory, J., delivered the opinion of the court.

The petitioner, Robert Edward Lee, was indicted, tried by a jury and found guilty of voluntary manslaughter. His punishment was fixed at five years in the penitentiary and he has been sentenced accordingly.

On the night of June 6, 1947, Johnson Regensburg, seventeen years of age, was killed by Lee by the infliction of a knife wound on the inside of the left thigh. The wound was a deep one and extended to the bone. It was approximately 13 inches long and was deeper on the lower part of the thigh than on the upper. The medical testimony discloses that Regensburg could not have received the

wound had he been standing in a normal position but that it could have been inflicted while he was walking or kicking.

There was a dance in progress in the Community building in King William county. The accused, accompanied by two other boys, Floyd Dungee and Boggs Kelley, drove into the grounds at the Community building and proceeded into the parking area. Kelley alone intended to attend the dance; Lee and Dungee did not intend to go. Lee was driving the automobile, and prior to going to the Community building, had been driving with his friends during the early part of the evening.

As he proceeded to the parking area something was thrown against the automobile. Lee thought it was a beer bottle or beer can, and he stopped the car. He inquired of those standing around, including the deceased, as to who had hit his car. Regensburg, a much larger man than Lee, replied that no one had hit his car, whereupon Lee stated "some son of a bitch hit my car with a beer bottle", Regensburg said if he was looking for trouble he had come to the right place, or words to that effect.

From the evidence of the Commonwealth Regensburg struck the first blow, slapping Lee in the face and Lee "backed up" and drew his knife from his pocket. The Commonwealth's evidence further discloses that Lee would advance upon Regensburg with the knife in his hand and that Regensburg would kick at the knife and Lee would back away to avoid the kick and then rush at Regensburg again with the open knife. This continued until they reached a point beyond or behind the parked cars and at that place the fatal wound was inflicted. The testimony is conflicting as to how the wound was inflicted. Afterwards Lee ran to the woods but voluntarily returned in a few minutes and turned the knife over to a State policeman. He told the officer at the time that he surrendered that Regensburg had been crowding him and he took the knife out of his pocket to try to keep him off. At the trial Lee testified that Regensburg was following him and he fell to

the ground and upon arising from the ground he accidentally cut Regensburg while Regensburg was kicking at him.

After the cutting Regensburg was taken to a doctor but died from the loss of blood before reaching the doctor's office.

The petitioner assigns as error the action of the court in granting instructions defining first and second degree murder. He also assigns as error the granting of the instructions on the presumption of malice, but in view of our ultimate conclusion it will be unnecessary to discuss these two assignments because upon a new trial he could not be found guilty of a higher offense than manslaughter. See Code, sec. 4918, and cases there cited.

The third assignment of error is directed to the court's action in admitting, in rebuttal, certain evidence offered by the Commonwealth. This assignment is the vital one and, in our view, will compel a reversal of the judgment of the trial court.

After the evidence in chief for the Commonwealth and for the accused had been completed the Commonwealth offered evidence, in rebuttal, of the good reputation of the deceased in the community in which he had lived as being a peaceful and law-abiding citizen, as a regular church attendant, and as being a model young man. The evidence was given by the local Baptist minister in charge of the two Baptist churches in that community and by another witness who lived near by, who testified that "the general reputation in the community in which he lived, as being a peaceful and law-abiding citizen was good."

When this evidence was offered, counsel for the accused objected but the court overruled his objection, and he promptly excepted to the court's ruling.

The accused may show in a homicide case, when he relies upon a plea of self-defense and has supported his plea with some evidence, the reputation or character of the deceased for violence and turbulence. *Jackson* v. *Commonwealth*, 98 Va. 845, 36 S E. 487; *Harrison* v. *Common-*

*wealth*, 79 Va. 374, 52 Am. Rep. 634; *State* v. *Peoples*, 106 W. Va. 262, 145 S. E. 389, and 26 Am. Jur., Homicide, sec. 344. Only then may the Commonwealth show that the deceased had the reputation of being a peaceful and law-abiding man. But the Commonwealth may not, in rebuttal, in the absence of any attack upon the character of the deceased, introduce evidence of his good reputation for peace and obedience to law, and that he was a regular church attendant and a model young man. Testimony that he was a church attendant and a model young man was not only irrelevant but aggravated the error.

The accused and the deceased were entire strangers and naturally the accused had no previous grudge or ill-feeling against the deceased. No attack had been made upon the character of Regensburg. His reputation, in the absence of evidence to the contrary, was presumed to be good. *State* v. *Arrington*, 88 W. Va. 152, 106 S. E. 445.

There seems to be no Virginia case directly in point. In *Dock* v. *Commonwealth*, 21 Gratt. (62 Va.) 909, this court held it to be reversible error for the Commonwealth to introduce *in chief* evidence as to the character of the person on whom the offense was committed. Here, as already stated, the character evidence was introduced in rebuttal, and this is a distinguishing point between the *Dock Case* and the present one.

Mr. Justice Egglestion, speaking for the court, in *Thomason* v. *Commonwealth*, 178 Va. 489, at pages 499-500, 17 S. E. (2d) 374, said: "By the final assignment of error the accused contends that the court erred in permitting the Commonwealth to introduce, in rebuttal, evidence of the reputation of Kirk, the deceased, as a peaceful and law-abiding citizen. Reliance is placed upon *Dock* v. *Commonwealth*, 21 Gratt. (62 Va.) 909. There it was held that on a trial for murder it is not competent for the Commonwealth to introduce evidence *in chief* as to the character of the person on whom the offense was committed. This is so because until the reputation of the deceased has been

attacked it is presumed to be good. 1 Wharton's Criminal Evidence, 10th Ed., section 57.

"But the converse of the proposition is equally true,—that is, if the accused opens the door by introducing evidence of the character of the deceased, the Commonwealth may in rebuttal show the latter's good character. *Dock* v. *Commonwealth, supra* (21 Gratt. (62 Va.), at page 911)."

The Attorney General relies heavily upon the case of *Graham* v. *Commonwealth,* 127 Va. 808, 103 S. E. 565. There it was decided that where the accused and other witnessess testified that just prior to the homicide the deceased approached the accused in a menacing and threatening manner, with his hand in his hip pocket, using abusive and profane language, the Commonwealth had the right, in rebuttal, to introduce testimony to the effect that the deceased had the reputation of being a man who did not use such language.

We do not think that the principle applied in the *Graham Case* is conclusive of the question here because of the material difference in the facts of the two cases.

In 26 Am. Jur., Homicide, section 349, the majority rule is stated in clear language to be as follows: "It is well settled that the State cannot, in the first instance and as a part of its evidence in chief, or before the character of the deceased has been attacked by the defense, introduce evidence of the reputation of the deceased for peaceableness or prove that he was a quiet and orderly citizen. Until the defense attacks the character or reputation of the deceased, it cannot be made the subject of proof by the prosecution, even though, according to the prevailing view, the defendant relies upon self-defense, and his evidence tends to prove that the deceased was the aggressor, although in a few States, where the defendant pleads self-defense and introduces evidence for the purpose of showing an apparently felonious assault upon him by the deceased, the State may, in rebuttal, show the good character or reputation of the deceased for quiet and peace. Where, however, the defense makes an attack on the deceased's character, the

prosecution, in rebuttal, may show that it was quiet and peaceable."

The attorney for the Commonwealth argues that, inasmuch as the accused relied upon a plea of self-defense, this was equivalent to an attack made upon the character or reputation of the deceased for violence and turbulence, thus opening the door for the Commonwealth to prove the good character of the deceased. Respectable authority is cited in the brief in support of that argument, though it presents the minority rule. See *Thrawley* v. *State*, 153 Ind. 375, 55 N. E. 95; *Ferguson* v. *State*, 138 Tenn. (11 Thomp.) 106, 196 S. W. 140; *State* v. *Holbrook*, 98 Ore. 43, 188 P. 947 (Petitions for rehearing denied. See 192 P. 640, 193 P. 434), and Wigmore on Evidence, 3rd Ed., Vol. 1, pp. 471-472. Mr. Wigmore says: "The State also can of course offer the deceased's peaceable character when the issue of self-defense has been raised, even though the defendant has not first introduced the deceased's violent character; though most courts thus far are singularly loath to accept this dictate of logic and fairness * * *."

Here, however, the testimony of the Commonwealth's own witnesses establishes the fact that the deceased struck the first blow and was the aggressor in beginning the affray. This is conceded in the brief of the Attorney General. He says: "For the Commonwealth, it appears that Regensburg slapped Lee." Therefore, even if the mere reliance upon a plea of self-defense is equivalent to an attack on the character of the deceased, we do not think it would be logical to apply such a rule where it was conclusively shown by the Commonwealth that the deceased was the aggressor. In any event, the principle contended for by the Attorney General is the minority view as shown by the quotation from American Jurisprudence, and we prefer not to apply that rule in Virginia.

The judgment is reversed, the verdict set aside, and the case remanded to the trial court for a new trial.

*Reversed and remanded.*